IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E.I. DU PONT DE NEMOURS AND           §
COMPANY,                              §
                                      §        C.A. No. 05-71-KAJ
                Plaintiff,            §
                                      §
v.                                    §        NON-ARBITRATION
                                      §
DAK AMERICAS LLC and DAK FIBERS       §
LLC,                                  §
                                      §
                Defendants.           §

DEFENDANTS DAK AMERICAS LLC'S AND DAK FIBERS LLC'S
BRIEF IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STAY

                            William J. Wade (#704)
                            (Wade@rlf.com)
                            Matthew W. King  (#4566)
                            (King@rlf.com)
                            RICHARDS, LAYTON & FINGER, P.A.
                            One Rodney Square
                            P.O. Box 551
                            Wilmington, DE  19899
                            (302) 651-7700

                            ATTORNEYS FOR DEFENDANTS DAK
                            AMERICAS LLC AND DAK FIBERS LLC

March 4, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

I.     NATURE AND STAGE OF THE CASE ................................................................1

II.    SUMMARY OF ARGUMENT ..............................................................................2

III.   STATEMENT OF FACTS .....................................................................................3

       A.    DUPONT AND POLIMOR, S.A. DE CV FORM A JOINT VENTURE .............3

       B.    DUPONT-AKRA AND DUPONT ENTER INTO A SUPPLY
             AGREEMENT IN 1999 ..............................................................................4

       C.    DUPONT SELLS ITS INTEREST IN DUPONT-AKRA TO POLIMOR,
             A MEXICAN ENTITY ...............................................................................5

       D.    DUPONT AND DAK FIBERS ENTER INTO A SECOND SUPPLY
             CONTRACT IN 2004 ................................................................................5

       E.    DUPONT'S CAUSES OF ACTION ...............................................................5

IV.    ARGUMENT ........................................................................................................6

       A.    STANDARD OF REVIEW FOR MOTION TO DISMISS FOR
             FAILURE TO STATE A CLAIM ..................................................................6

       B.    DUPONT'S FRAUD AND NEGLIGENCE CLAIMS SHOULD BE
             DISMISSED FOR FAILURE TO PLEAD JUSTIFIABLE RELIANCE,
             FAILURE TO SATISFY RULE 9(B), AND BECAUSE THESE CLAIMS
             ARE BARRED BY THE ECONOMIC LOSS DOCTRINE ...............................7

             1.    DuPont Fails to Plead that it Justifiably Relied on Purported
                   Misrepresentations by DAK .............................................................8

             2.    The Economic Loss Doctrine Also Bars DuPont From Recovering
                   Damages in Tort for Injuries Unaccompanied by Bodily Harm or
                   Property Damage ..........................................................................10

             3.    DuPont Fails to Meet the Heightened Pleading Burden of Federal
                   Rule of Civil Procedure 9(b) .........................................................15

       C.    DUPONT'S BREACH OF CONTRACT, FRAUD, AND NEGLIGENT
             MISREPRESENTATION CLAIMS ARE ALSO PRECLUDED BY THE
             STATUTES OF LIMITATIONS ..................................................................20

             1.    DuPont's Breach of the 1999 Supply Agreement Claims Are
                   Barred by the Applicable Statutes of Limitations ...........................20

             2.    DuPont's Fraud and Negligent Misrepresentation Claims Also
                   Should be Dismissed Because They are Precluded by the Delaware
                   Statute of Limitations ....................................................................22

i

# TABLE OF CONTENTS
### (continued)

Page

      3.    DuPont Cannot Argue that the Statute of Limitations Should be
           Tolled .................................................................................................... 23

V.    DEFENDANTS' MOTION TO STAY THE ANSWER DEADLINE AND
    FURTHER ACTION ON DUPONT'S CLAIMS FOR BREACH OF THE 2004
    SUPPLY CONTRACT ............................................................................. 25

VI.   CONCLUSION AND PRAYER FOR RELIEF ........................................... 28

# TABLE OF AUTHORITIES

## CASES

Allstate Ins. Co. v. Spinelli, 443 A.2d 1286 (Del. 1982) .............................................................21

Arndt v. Prudential Bache Sec., Inc., 603 F. Supp. 674 (S.D. Cal. 1984)......................................16

Bell Helicopter Textron, Inc. v. Tridair Helicopters, Inc.,
    982 F. Supp. 318 (D. Del. 1997) ...........................................................................................11

Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189 (M.D.N.C. 1997)...........................................16

Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd., 136 F.R.D. 485 (E.D. Wis. 1991) ........................26

In re Burger, 125 B.R. 894 (Bankr. D. Del. 1991) ........................................................................23

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997) .......................4, 5, 17, 19

Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.,
    No. Civ. A. 98C-02-217 WCC, 2002 Del. Super. LEXIS 305
    (Del. Super. Ct. June 13, 2002) ......................................................................................passim

Circuit City Stores, Inc. v. Citgo Petroleum Corp., No. 92-CV-7394,
    1994 U.S. Dist. LEXIS 12634 (E.D. Pa. Sept. 7, 1994)..............................................25, 26

City of Phila. v. Beretta U.S.A. Corp., 277 F.3d 415 (3d Cir. 2002) ...............................................7

Coleman v. PricewaterhouseCoopers, LLC, 854 A.2d 838 (Del. 2004) ...........................22, 23, 24

Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628 (3d Cir. 1989)...................................................20

Danforth v. Acorn Structures, Inc., 608 A.2d 1194 (Del. 1992) .........................................8, 10, 11

Danforth v. Acorn Structures, Inc., No. 90C-JN-30,
    1991 Del. Super. LEXIS 454 (Del. Super. Ct. Nov. 22, 1991) .........................................7, 14

DeBakey Corp. v. Raytheon Serv. Co., C.A. No. 14947,
    2000 Del. Ch. LEXIS 129 (Del. Ch. Aug. 25, 2000) ..........................................................9

Delchi Carrier, SpA v. Rotorex Corp., 71 F.3d 1024 (2d Cir. 1995) ............................................21

Feldbaum v. McCrory Corp., No. 12006, 1992 Del. Ch. LEXIS 113 (Del. Ch.
    June 1, 1992)..........................................................................................................................8

Fineberg v. Credit Int'l Bancshares, Ltd., 857 F. Supp. 338 (D. Del. 1994) .................................21

Finnegan v. Univ. of Rochester Med. Ctr., 180 F.R.D. 247 (W.D.N.Y. 1998)..............................25

iii

Gilmour v. Bohmueller, No. 04-2535, 2005 U.S. Dist. LEXIS 1611 (E.D. Pa. Jan. 27, 2005)...............................................................................................................16

Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086 (C.D. Cal. 1999) ...................................................................................................16

Gold X-Press Corp. v. Very Beary Venture I, No. 03-60176, 2003 U.S. Dist. LEXIS 19747 (S.D. Fla. Oct. 3, 2003) ..........................................17

Guardian Constr. Co. v. Tetra Tech Richardson, Inc., 583 A.2d 1378 (Del. Super. 1990) .................................................................................................14

Hough/Lowe Assocs., Inc. v. CLX Realty Co., 760 F. Supp. 1141 (E.D. Pa. 1991) ....................................................................................................16

Int'l Fid. Ins. Co. v. Mattes Elec., Inc., No. Civ. A 99C-10-065 WCC, 2002 Del. Super. LEXIS 441 (Del. Super. Ct. June 27, 2002).....................11, 13, 14

Johnson v. Hockessin Tractor, Inc., 420 A.2d 154 (Del. 1980) ......................................21

Lecates v. Hertrich Pontiac Buick Co., 515 A.2d 163 (Del. Super. Ct. 1986) ...............23

In re Leslie Fay Cos., Sec. Litig., 918 F. Supp. 749 (S.D.N.Y. 1996) ...........................16

Lindner Dividend Fund, Inc. v. Ernst & Young, 880 F. Supp. 49 (D. Mass. 1995) ......16

Lock v. Schreppler, 426 A.2d 856 (Del. Super. Ct. 1981) ................................................9

Lord v. Souder, 748 A.2d 393 (Del. 2000)........................................................................7

Lum v. Bank of Am., 361 F.3d 217 (3d Cir. 2004)...................................................15, 18

Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436 (M.D.N.C. 2005)...........................................................................................................16

Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000) .............................................................6

MeterLogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346 (S.D. Fla. 2000).....17

Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...................................................................................................16

Oatway v. Am. Int'l Group, Inc., 325 F.3d 184 (3d Cir. 2003) .........................................6

Oil Express Nat'l, Inc. v. D'Alessandro, 173 F.R.D. 219 (N.D. Ill. 1997) .....................26

Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co., 484 F. Supp. 1375 (D. Del. 1980)................................................................................................................24

iv

Pitten v. Jacobs, 903 F. Supp. 937 (D.S.C. 1995) ..................................................... 16

Porter v. United States Dept. of Army, No. 93-C-6900,
    1995 U.S. Dist. LEXIS 10864 (N.D. Ill. July 14, 1995) ........................................ 26

In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283
    (3d Cir. 1998) ........................................................................................................... 1

Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548 (3d Cir. 2002)........................ 4

Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002)...................................................... 21

Rogers v. Cisco Sys., Inc., 268 F. Supp. 2d 1305, 1310-11 (N.D. Fla. 2003)............... 17

Scarfo v. McDonald, C.A. No. 96C-10-264-VAB,
    1998 Del. Super. LEXIS 476 (Del. Super. Ct. Dec. 3, 1998)............................... 9, 10

In re SmarTalk Teleservices, Inc. Sec. Litig., 124 F. Supp. 2d 487
    (S.D. Ohio 2000) ................................................................................................... 16

Studiengesellschaft Kohle, mbH v. Hercules, Inc., 748 F. Supp. 247
    (D. Del. 1990).......................................................................................... 23, 24, 25

T.P. Inc. v. J & D's Pets, Inc., C.A. No. 98C-01-205-WTQ,
    1999 Del. Super. LEXIS 8 (Del. Super. Ct. Feb. 26, 1999) ................................. 9, 10

Toner v. Allstate Ins. Co., 821 F. Supp. 276 (D. Del. 1993) ........................... 15, 17, 20

Travelers Cas. & Sur. Co. of Am. v. Amoroso, No. C-03-5746-PJH, 2004 U.S. Dist.
    LEXIS 17604 (N.D. Cal. Aug. 24, 2004) .............................................................. 16

In re Tyson Foods, Inc. Sec. Litig., No. 01-425-SLR, 2004 U.S. Dist. LEXIS 11122
    (D. Del. June 17, 2004)........................................................................................... 17

United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966) ....................................... 1

United States v. LBS Bank—N.Y., Inc., 757 F. Supp. 496
    (E.D. Pa. 1990) ...................................................................................................... 17

Ward v. Fox & Lazo, Civ. A. No. 13582, 1996 Del. Ch. LEXIS 92
    (Del. Ch. July 8, 1996) ...................................................................................... 7, 9, 10

Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002) ........................... 12, 13, 14

Wilson v. Bank of Am., N.A., No. C04-1465-TEH, 2004 U.S. Dist. LEXIS 16353 (N.D.
    Cal. Aug. 12, 1992) ................................................................................................ 16

v

## STATUTES & RULES

28 U.S.C. § 1331 ........................................................................................................... 1

28 U.S.C. § 1367 ........................................................................................................... 1

15 U.S.C. App. art. 7(2) ............................................................................................... 21

6 Del. C. § 2-725 ......................................................................................................... 21

10 Del. C. § 8106 .................................................................................................... 21, 22

Fed. R. Civ. P. 9(b) ............................................................................................. 2, 3, 15

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 6

Restatement (Second) of Torts § 541 (1977) .............................................................. 9

vi

Pursuant to Federal Rules of Civil Procedure 9(b), 12(a), and 12(b)(6), Defendants DAK Americas LLC and DAK Fibers LLC (collectively, "DAK" or "Defendants") respectfully file this brief in support of their motion to dismiss plaintiff E.I. du Pont de Nemours' ("DuPont" or "Plaintiff") complaint ("Complaint") and stay the deadline to file an answer pending a ruling on the motion to dismiss. In that regard, DAK respectfully states as follows[1]:

## I.     NATURE AND STAGE OF THE CASE

On January 10, 2005, DuPont served its complaint, filed in the Superior Court of the State of Delaware, New Castle County, entitled <u>E.I. du Pont de Nemours & Co. v. DAK Americas LLC and DAK Fibers LLC</u>, C.A. No. 04C-12-112 FSS (the "Complaint or "Compl."). On February 8, 2005, DAK removed the case to this Court because of the operation of the United Nations Convention on Contracts for the International Sale of Goods (the "CISG"), a self-executing international treaty governing contracts between parties from different signatory nations, which gave this Court federal question jurisdiction pursuant to 28 U.S.C. § 1331.[2]

On March 4, 2005, pursuant to Federal Rules of Civil Procedure 9(b), 12(a), and 12(b)(6), DAK filed a motion to dismiss with prejudice DuPont's Complaint and stay the deadline to file an answer pending a ruling on the motion to dismiss (the "Motion"). This is the brief in support of the Motion.

---

[1] In the Motion accompanying this brief, DAK is requesting oral argument in accordance with Rule 7.1.4 of the Local Rules of the District of Delaware.

[2] As a preliminary matter, this Court has supplemental jurisdiction over DuPont's state law claims of fraud and negligent misrepresentation. 28 U.S.C. § 1367. Section 1367 provides that this Court has supplemental jurisdiction over all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." <u>Id.</u> Here, Plaintiff's state law claims, as pleaded, are intertwined with its claims for breach of the 1999 Supply Contract, so that they fall within this Court's original jurisdiction under 28 U.S.C. § 1331. (<u>See generally</u> Compl.) In light of this common nucleus of operative facts regarding the federal and state claims, supplemental jurisdiction of the state law claims is proper. See <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966); <u>In re Prudential Ins. Co. of Am. Sales Practices Litig.</u>, 148 F.3d 283, 299-302 (3d Cir. 1998).

## II.    SUMMARY OF ARGUMENT

DuPont turns logic on its head and exceeds the bounds of common sense in its attempt to manufacture tort claims against DAK that simply have no merit. In addition, many of DuPont's claims are stale and are barred by the applicable statutes of limitations. As a result, the bulk of DuPont's Complaint should be dismissed for at least four significant reasons, and any activity on the remaining portions of the Complaint should be stayed pending resolution of this Motion.

First, DuPont's fraud and negligent representation claims rest on the premise that DuPont was defrauded by a joint venture of which DuPont was a 50% co-owner and for which DuPont appointed one of its own employees as president. Unbelievably, according to DuPont, this same individual, an employee of DuPont, is the alleged maker of most of the alleged misrepresentations. Governing Delaware law disposes of such fraud and negligence misrepresentation claims through the requirement that DuPont meet its pleading burden to establish justifiable reliance. DuPont has not and cannot meet this burden, given that DuPont was effectively both the maker and recipient of the alleged fraudulent or negligent misrepresentations. For this reason alone, DuPont's fraud and negligence misrepresentation claims fail.

Second, DuPont's fraud and negligent misrepresentation claims also are barred by the economic loss doctrine. Since DuPont's tort claims are based on a contractual relationship, and Plaintiff is merely seeking pure economic losses arising from contracts, this doctrine requires dismissal of such claims.

Third, DuPont's fraud and negligent misrepresentation claims fail for another independent reason. Rule 9(b), which is designed to protect defendants from improvident

-2-

charges of wrongdoing, creates a pleading hurdle that the Complaint fails to meet. DuPont fails to meet the particularity requirement of Rule 9(b) inasmuch as the vague and conclusory allegations of misrepresentation are the type that the Third Circuit routinely dismisses. Missing from the Complaint are the requisite facts to meet the heightened pleading burden 9(b) imposes, mandating dismissal of DuPont's misrepresentation claims.

Finally, DuPont's claims for fraud, negligent misrepresentation, and breach of a 1999 supply agreement are barred by the applicable statutes of limitations. On the face of the Complaint, the claims accrued more than (i) three years for the fraud and negligent misrepresentation claims, and (ii) three or four years (whichever is the applicable statute of limitations) for the breach of contract claim from the date DuPont instituted this lawsuit. As a result, DuPont's fraud, negligent misrepresentation, and breach of contract claims relating to a 1999 supply agreement must be dismissed.

In the interest of promoting efficiency and to avoid duplicative pleading, DAK also moves that this Court stay this action, including the need to file an answer to the claim for breach of a 2004 supply agreement, until after this Court rules on this Motion.

### III.    STATEMENT OF FACTS[3]

**A.    DUPONT AND POLIMOR, S.A. DE CV FORM A JOINT VENTURE.**

On April 1, 1999, DuPont and Polimor, S.A. de CV ("Polimor"), a company organized under the laws of Mexico, formed a joint venture named DuPont-Akra Polyester, LLC

---

[3] For purposes of this Motion and brief only, DAK sets forth the facts alleged in the Complaint by DuPont. DAK, however, reserves the right to contest all such facts and denies that DuPont is entitled to any relief whatsoever.

("DuPont-Akra").[4]  DuPont and Polimor each retained a 50 percent ownership interest in DuPont Akra.  (See Compl. at ¶ 6; Exhibit ("Ex.") A, LLC Agreement.)

During the initial term of the LLC Agreement, DuPont had the sole power to appoint the president of DuPont-Akra and exercised this power to appoint Hector Camberos, *a DuPont employee*, as the President of DuPont-Akra in 1999.  (See Ex. A, LLC Agreement at § 6.1(i); Compl. at ¶ 13.)  The LLC Agreement also contained a provision that empowered DuPont to review the joint venture's records.  (See Ex. A, LLC Agreement at § 9.1(b).)  ("Any Member or its designated representative has the right to have reasonable access to and inspect and copy the contents of such books or records and shall also have reasonable access during normal business hours to such additional financial information, documents, books and records.").

## B.    DUPONT-AKRA AND DUPONT ENTER INTO A SUPPLY AGREEMENT IN 1999.

On October 1, 1999, DuPont entered into a supply agreement with DuPont-Akra (the "1999 Supply Contract").  (See Compl. at ¶ 6.)  The 1999 Supply Contract required DuPont's Sontara business to purchase a certain percentage of its polyester staple fiber ("PSF") requirements from DuPont-Akra.  (Id.)  The 1999 Supply Contract also contained certain pricing provisions.  (Id.)

---

[4] This Court may consider facts outside of the pleadings when the evidence is "integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); see also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (trial court has the discretion to consider evidence outside of the complaint when ruling on a 12(b)(6) motion to dismiss, including documents whose contents are alleged in the complaint and whose authenticity is undisputed).  The Complaint misidentifies the parties to the joint venture as DuPont and Alpek S.A. de C.V.  (See Compl. at ¶ 6.)  As is made clear by the true and correct copies of redacted excerpts from the Limited Liability Company Agreement of DuPont-Akra Polyester, LLC ("LLC Agreement"), attached as Ex. A, the actual parties to the joint venture were DuPont and Polimor -- not DuPont and Alpek.  This factual discrepancy is not significant for purposes of this Motion, but rather than repeat inaccurate facts from the Complaint, DAK submits Ex. A to demonstrate the correct facts.

**C.     DUPONT SELLS ITS INTEREST IN DUPONT-AKRA TO POLIMOR, A MEXICAN ENTITY.**

On June 12, 2001, DuPont entered into a Framework Agreement under which it would sell its 50% ownership interest in DuPont-Akra to Polimor.[5] (See Compl. at ¶ 16; Ex. B, Framework Agreement.) Under the terms of the Framework Agreement, the LLC Agreement would terminate, and DuPont's interest in the joint venture would transfer to Polimor, upon the exercise of a put option by DuPont or a call option by Polimor. (See Ex. B, Framework Agreement at Article 8.) On March 25, 2002, Polimor exercised its call option, making the sale of DuPont's interest in the joint venture effective as of April 1, 2002.[6] (See Ex. C, Call Option Notice.) DuPont-Akra was renamed DAK Fibers LLC after the sale.[7] (See Compl. at ¶ 16.)

**D.     DUPONT AND DAK FIBERS ENTER INTO A SECOND SUPPLY CONTRACT IN 2004.**

On April 1, 2004, DAK and DuPont entered into a second supply contract (the "2004 Supply Contract") that terminated the 1999 Supply Contract. (Compl. at ¶ 29.) The 2004 Supply Contract contains new pricing terms. (Id.)

**E.     DUPONT'S CAUSES OF ACTION.**

In the Complaint, DuPont purports to assert two claims for breach of the 1999 Supply Contract against DAK Fibers LLC, one claim for breach of contract of the 2004 Supply

---

[5] Once again, the Complaint contains inaccurate facts as to the identity of the Mexican corporation to whom DuPont sold its interest, as well as with regard to the timing of the sale. As is clear from the excerpts of the Framework Agreement dated June 12, 2001 among DuPont, Du-Pont-Akra, Polimor, and others (redacted excerpts of which are attached hereto as Ex. B), DuPont's interest was sold to Polimor, not Alpek.

[6] Because this Court may consider facts outside of the pleadings when the evidence is relied upon in the Complaint, this Court may consider the facts outside the Complaint that establish that the sale of DuPont's interest in the joint venture occurred in 2002, not in 2001 as is set forth and relied upon by DuPont in the Complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426; (Compl. at ¶ 16) Therefore, a true and correct copy of the call option notice ("Call Option Notice") sent by Polimor to DuPont on March 25, 2002 that indicates that the sale was effective as of April 1, 2002 is attached at Ex. C and is incorporated herein by reference.

[7] DAK Fibers was later merged into DAK Americas, who is also named in this lawsuit. For the remainder of this brief, for ease of reference, when appropriate and when clear from context which entity was in existence at the time in question, a referral to "DAK" includes DuPont-Akra, DAK Fibers, and DAK Americas.

-5-

Contract against DAK Fibers LLC, and fraud and negligence misrepresentation claims against DAK Americas and DAK Fibers LLC. (See generally Compl.)

## IV.    ARGUMENT

### A.    STANDARD OF REVIEW FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

This Court should dismiss DuPont's fraud, negligent misrepresentation, and breach of the 1999 Supply Contract (Counts I, II, IV, and V of the Complaint) claims because DuPont has failed to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). This Court may grant this Motion under Rule 12(b)(6) if, accepting all well-pleaded allegations in the Complaint as true and viewing them in the light most favorable to DuPont, DuPont is not entitled to relief. See Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003); Maio v. Aetna, Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000). In reaching its decision, this Court does not have to accept as true "unsupported conclusions and unwarranted inferences." Maio, 221 F.3d at 485 n.12 (citation omitted).

Applying these standards, DuPont cannot prevail on its fraud, negligent misrepresentation, and breach of the 1999 Supply Contract claims as a matter of law. First, this Court should dismiss DuPont's fraud and negligence claims because DuPont cannot prove that it justifiably relied on any alleged representations by DAK. Second, this Court should dismiss DuPont's tort claims because DuPont is not entitled to relief under the economic loss doctrine. Third, DuPont has not stated facts in support of such claims with sufficient particularity as is required under Rule 9(b). Finally, this Court should dismiss Counts I, II, IV, and V of the Complaint because these claims are barred by the applicable statutes of limitations.

**B.    DUPONT'S FRAUD AND NEGLIGENCE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD JUSTIFIABLE RELIANCE, FAILURE TO SATISFY RULE 9(B), AND BECAUSE THESE CLAIMS ARE BARRED BY THE ECONOMIC LOSS DOCTRINE.**

To sustain a fraud claim under Delaware law,[8] DuPont must meet the following elements:  (1) a false representation of fact made by DAK; (2) DAK's knowledge or belief that the representation was false, or made with reckless indifference to the truth; (3) intent to induce DuPont to act or to refrain from acting; (4) DuPont's action or inaction was taken in justifiable reliance on the representation made by DAK; and (5) damage to DuPont as a result of such reliance.  See Lord v. Souder, 748 A.2d 393, 402 (Del. 2000).[9]

To sustain a negligent misrepresentation claim under Delaware law, DuPont must prove:  (1) a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) failure to exercise reasonable care in obtaining or communicating information; (4) a pecuniary loss caused by justifiable reliance on false information; (5) DAK supplied the information to DuPont for use in business transactions with third parties; and (6) DAK is in the business of supplying information.  See Ward v. Fox & Lazo, Civ. A. No. 13582, 1996 Del. Ch. LEXIS 92, at *10-11 (Del. Ch. July 8, 1996); Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg., No. Civ. A. 98C-02-217 WCC, 2002 Del. Super. LEXIS 305, at *23-26 (Del. Super. Ct. June 13, 2002) (unpublished)[10]; Danforth v. Acorn Structures, Inc., No. 90C-JN-30,

---

[8] This Court must apply the laws of the state in which it sits when deciding claims based on state law.  See City of Phila. v. Beretta U.S.A. Corp., 277 F.3d 415, 421 (3d Cir. 2002).  Additionally, this Court must follow the precedents of the state's highest court and, when such court is silent, predict how that court would decide the issue presented.  See id.  Accordingly, this Court must apply Delaware law to DuPont's state law fraud and negligence claims.  The claims for breach of the 1999 Supply Contract that are a part of this Motion are governed by federal law, because the CISG governs international contracts for sale.  (See Defendants' Notice of Removal.)

[9] Although the Complaint somewhat confusingly labels the cause of action in Count IV of the Complaint "Fraud," the elements recited in Count IV actually correspond to those of a claim for fraudulent misrepresentation.  (See Compl. at ¶¶ 46-51.)

[10] In accordance with Rule 7.13 of the Local Rules of the District of Delaware, attached as Exs. D and E respectively are true and correct copies of the Christiana and Danforth decisions.  As explained more fully in section IV(B)(3)(a)

-7-

1991 Del. Super. LEXIS 454, at *2-8 (Del. Super. Ct. Nov. 22, 1991) (unpublished), aff'd, 608 A.2d 1194 (Del. 1992).

DuPont's fraud and negligent misrepresentation claims suffer from at least three fatal defects mandating dismissal: (1) DuPont fails to come close to meeting its pleading burden to demonstrate justifiable reliance; (2) DuPont's claims are barred by the economic loss doctrine; and (3) DuPont fails to meet the particularity requirements of Federal Rule of Civil Procedure 9(b) inasmuch as DuPont fails to plead who at DAK made the alleged misrepresentations, when the representations were made, or even whether such misrepresentations were false.[11]

1.     DuPont Fails to Plead that it Justifiably Relied on Purported Misrepresentations by DAK.

DuPont simply cannot plead justifiable reliance on misrepresentations allegedly made by a joint venture in which DuPont was a 50% co-owner and when such misrepresentations are allegedly made by an individual employed by DuPont. DuPont's claim rests on the illogical premise that DuPont committed fraud against itself, a position unsupported by any Delaware authority or law. As a result, DuPont's fraud and negligent misrepresentation claims fail.

A recipient of a fraudulent or negligent misrepresentation is unjustified in relying upon its truth if he or she knows that it is false or if its falsity is obvious to him or her. See

below, the Christiana and Danforth decisions bar a plaintiff from asserting tort claims when the losses are purely economic in nature and are unaccompanied by personal injury or property damage

[11] In addition to these three reasons, DuPont's fraud and negligent misrepresentation claims should be dismissed because DuPont is improperly attempting to transmute a breach of contract case into fraud and negligent misrepresentation claims. The basis of DuPont's fraud and negligent misrepresentation claims are inextricably tied to, and dependant upon, DuPont's ability to successfully litigate its breach of contract claims. (See Compl. at ¶¶ 13-28.) Arguably, for this additional reason, DuPont's fraud and negligent misrepresentation claims should be dismissed. See Feldbaum v. McCrory Corp., No. 12006, 1992 Del. Ch. LEXIS 113, at *33-37 (Del. Ch. June 1, 1992) (unpublished) (dismissing claim for fraud when the gist of "alleged misstatements" were breach of contract issues that would require plaintiff to litigate the breach of contract claim to prosecute the fraud theory the plaintiffs were pressing). In accordance with Rule 7.13 of the Local Rules of the District of Delaware, attached as Ex. F is a true and correct copy of the Feldbaum decision.

<u>Ward</u>, 1996 Del. Ch. LEXIS 92, at *10-11 citing (<u>Restatement (Second) of Torts § 541</u> (1977));

<u>Lock v. Schreppler</u>, 426 A.2d 856, 862 (Del. Super. Ct. 1981) (superceded in part by statute).

Delaware courts dismiss fraud and negligent misrepresentation claims when it is patent that the

allegedly "defrauded" plaintiff knew that the alleged false statement was false or if such falsity

was obvious to the plaintiff. <u>See, e.g.</u>, <u>Ward</u>, 1996 Del. Ch. LEXIS 92, at *11-14 (plaintiff failed

to justifiably rely on alleged misrepresentation regarding water damage when such water damage

was observed by plaintiff on inspections and when plaintiff's *agent* inspector identified such

damage in reports to the plaintiff); <u>T.P. Inc. v. J & D's Pets, Inc.</u>, C.A. No. 98C-01-205-WTQ,

1999 Del. Super. LEXIS 8, at *10-11 (Del. Super. Ct. Feb. 26, 1999) (finding hornbook law that

a plaintiff must justifiably rely on the truthfulness of the representation at issue, so that a plaintiff

who knows a representation is false is precluded from asserting a fraud claim); <u>Scarfo v.</u>

<u>McDonald</u>, C.A. No. 96C-10-264-VAB, 1998 Del. Super. LEXIS 476, at *6-8 (Del. Super. Ct.

Dec. 3, 1998) (finding that it is "beyond the bounds of reason" and unjustified for plaintiffs to

claim reliance on misrepresentations they knew to be false).

       Similarly, DuPont's fraud and negligent misrepresentation claims turn "logic on

its head" and are "beyond the bounds of reason and common sense." <u>See</u> <u>Scarfo</u>, 1998 Del.

Super. LEXIS 476, at *6-8; <u>see also</u> <u>DeBakey Corp. v. Raytheon Serv. Co.</u>, C.A. No. 14947,

2000 Del. Ch. LEXIS 129, at *81-82 (Del. Ch. Aug. 25, 2000) (rejecting claims of justifiable

reliance claim that turn logic and common sense on its head). As a 50% partner in the joint

venture with superior knowledge as a result of being in the business for years, DuPont knew of

the falsity or truth of any representation made by DAK to DuPont. Further, the alleged maker of

the alleged representations, the president of the joint venture was a *DuPont* employee appointed

to the presidency of the joint venture by DuPont under the terms of the LLC Agreement. (<u>See</u>

-9-

Compl. at ¶ 13; Ex. A, LLC Agreement at § 6.1(i).)  Further, the LLC Agreement even contained a provision that empowered DuPont to review the joint venture's records.  (See Ex. A, LLC Agreement at § 9.1(b) ("Any Member or its designated representative has the right to have reasonable access to and inspect and copy the contents of such books or records and shall also have reasonable access during normal business hours to such additional financial information, documents, books and records.")).

Hence, the facts set forth in the Complaint and the documents referenced in such Complaint undercut DuPont's ability to claim that it justifiably relied on the alleged misrepresentations made by DAK, a joint venturer that was induced by DuPont to enter into this business in the United States.  Even after DuPont sold its interest in the joint venture in 2002, it cannot claim to have justifiably relied on misrepresentations it knew to be false based on the knowledge it obtained as a co-owner before the business was sold.  See Ward, 1996 Del. Ch. LEXIS 92, at *11-14.  In short, DuPont's illogical fraud and negligent misrepresentation claims must be dismissed with prejudice.  See T.P. Inc., 1999 Del. Super. LEXIS 8, at *10-11; Scarfo, 1998 Del. Super. LEXIS 476, at *6-8.

2.    The Economic Loss Doctrine Also Bars DuPont From Recovering Damages in Tort for Injuries Unaccompanied by Bodily Harm or Property Damage.

   a.    **The Economic Loss Doctrine Bars Recovery Because DuPont's Alleged Damages are Purely Economic in Nature.**

DuPont's tort claims are also barred by the economic loss doctrine.  Under Delaware law, a plaintiff asserting a tort cause of action cannot recover damages for losses "unaccompanied by a bodily harm or property damage."  Christiana, 2002 Del. Super. LEXIS 305, at *20-21.  The economic loss doctrine prohibits DuPont from asserting tort claims to recover damages that are purely economic in nature.  See Danforth, 608 A.2d at 1195.  The

-10-

rationale for the doctrine is that the parties to a contract are able to allocate the risks of monetary loss in their agreements, which reflect their economic expectations. Id. at 1200 (noting that "allegations of only economic loss do not implicate tort law concerns with safety, but do implicate commercial law concerns with economic expectations.").[12]

Moreover, the Christiana case, and other cases adopting its reasoning, make clear that Delaware courts are extending the doctrine to other torts. Delaware courts have specifically applied the doctrine to negligent misrepresentation claims outside of a product liability context.[13] See Christiana, 2002 Del. Super. LEXIS 305, at *21 ("While initially a doctrine related to product liability actions, the courts have expanded the doctrine's application beyond its original scope to any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or to property other than the bargained for item."); Int'l Fid. Ins. Co. v. Mattes Elec., Inc., No. Civ. A 99C-10-065 WCC, 2002 Del. Super. LEXIS 441, at *3 (Del. Super. Ct. June 27, 2002) (unpublished) (applying doctrine to a negligent misrepresentation claim).[14] Thus, DuPont cannot assert a claim for negligent misrepresentation if all it seeks is economic damages that are available by virtue of a contractual relationship with Defendants. Arguably, this is especially the case where the contract involves the sale of goods inasmuch as

---

[12] "Economic" losses are defined as "damages for inadequate value, costs of repair, replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property." Danforth, 608 A.2d at 1195

[13] Plaintiff may refer this Court to a case decided in the District of Delaware before Christiana in which that court noted that the Delaware Supreme Court had not settled the issue of whether the economic loss doctrine applied to negligent misrepresentation claims and indicated its opinion that the Delaware court would probably not extend the doctrine beyond the product liability context. Bell Helicopter Textron, Inc. v. Tridair Helicopters, Inc., 982 F. Supp. 318, 322 (D. Del. 1997) However, Delaware cases decided after Bell Helicopter, Christiana and other cases adopting its reasoning, make clear that Delaware courts have extended the doctrine to other torts.

[14] In accordance with Rule 7.13 of the Local Rules of the District of Delaware, attached as Ex. G is a true and correct copy of the Int'l Fidelity decision.

the Plaintiff is able to (i) set a fixed price and calculate its damages, and (ii) purchase goods from other sources mitigating its damages.

Moreover, the economic loss doctrine also should bar DuPont's fraud claim. The Third Circuit has held (in the absence of state supreme court precedent) that when a plaintiff is only seeking pure economic losses arising from the contract, the plaintiff cannot assert a claim for fraud and may only recover the remedies bargained for in the agreement. See Werwinski v. Ford Motor Co., 286 F.3d 661, 680 (3d Cir. 2002). In Werwinski, the Third Circuit provided the analytical framework for determining that the economic loss doctrine extends to fraud claims when state law is silent on the issue. Id. The Third Circuit first looked at whether the Pennsylvania Supreme Court or intermediate courts had examined the issue, and in the absence of any state law, the court then looked to federal appeals and district court cases interpreting state law. Finally, the Werwinski court looked to the decisions of other jurisdictions that discussed the issue. Id. at 675.

The Third Circuit concluded that the Pennsylvania Supreme Court and intermediate courts were silent regarding whether the economic loss doctrine applied to fraud claims, and that the Pennsylvania federal courts provided little guidance on the issue. Id. at 675.[15] Based on case law from Florida, Wisconsin, and Minnesota, the Third Circuit identified an "emerging trend" in other jurisdictions that recognized a "limited exception to the economic loss doctrine for fraud claims, but only where the claims at issue arise independently of the underlying contract." Id. (quoting Raytheon Co. v. McGraw-Edison Co., 979 F. Supp. 858, 870 (E.D. Wis. 1997). Moreover, the court concluded that "the mental state of the wrongdoer is

---

[15] Although Pennsylvania state courts had not spoken on the issue of whether the economic loss doctrine extends to fraud claims, the Third Circuit noted that the Pennsylvania courts showed a "lack of hospitality to tort liability for purely economic loss." Id. at 680 (quoting Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110, 119 (3d Cir. 1987)).

-12-

irrelevant from the buyer's perspective: a plaintiff suffers the same harm – i.e., economic losses – regardless of whether the misrepresentation is innocent, negligent, or intentional." Id. at 679-80. Essentially, the plaintiff is made whole through the remedies available in the agreement, regardless of the type of tort that is pleaded. Id. at 680.

Because this case presents very similar circumstances as those in Werwinski, this Court should conclude that the Delaware Supreme Court would likewise extend the economic loss doctrine to fraud claims. As in Werwinski, the Delaware Supreme Court and lower courts appear to have not considered the doctrine in the context of fraud claims in any reported decisions. Nevertheless, a trend is emerging in the Delaware Superior Courts that a plaintiff should not recover in tort for purely economic losses. See, e.g., Christiana, 2002 Del. Super. LEXIS 305, at *20-21; Int'l Fid., 2002 Del. Super. LEXIS 441, at *1. Moreover, the Third Circuit's analysis of persuasive authority in other jurisdictions – holding that a plaintiff is not entitled to recovery for fraud if the claim is not separate from the contract and the plaintiff can be made whole through contractual remedies – applies with equal force here. See Werwinski, 286 F.3d at 680.

In this case, DuPont is merely seeking damages for economic losses stemming from a purported breach of the 1999 Supply Contract. (See generally Compl.) DuPont alleges that DAK breached the contract by failing to charge the Purchase Price for the sale of goods as set forth in the agreements. (See Compl. at ¶¶ 36, 40.) By its own admission, DuPont is seeking the same damages for its negligent misrepresentation and fraud claims, alleging in Count IV and V that it suffered damages "as a direct result of its reliance on [the] false representations, in that DuPont paid a higher price for its purchase of PSF than it was contractually obligated to pay." (Compl. at ¶¶ 51, 58 (emphasis added).) In other words, all that DuPont is seeking in damages

-13-

for its tort claims is the difference between the higher price it paid to purchase PSF, a good, and the purchase price DuPont claims it would have been entitled. These damages are purely economic in nature and do not involve any independent personal or property damage resulting from a tort that is separate from the contractual "sale of goods" claims. Accordingly, this case falls within the type of case contemplated by the Delaware superior court cases like <u>Danforth</u> and <u>International Fidelity</u> and by the Third Circuit in <u>Werwinski</u>, in which the economic loss doctrine bars recovery.

b.    **DuPont's Claims Do Not Meet the Only Recognized Exception to the Economic Loss Doctrine.**

DuPont's claims do not fall within the only exception to the economic loss doctrine recognized by the Restatement (Second) of Torts and adopted by Delaware in <u>Guardian Constr. Co. v. Tetra Tech Richardson, Inc.</u>, 583 A.2d 1378 (Del. Super. 1990). Delaware's narrow and strict construction of this exception requires the following two elements: (1) the defendant supplied the information to plaintiff for use in a business transaction, and (2) the defendant is in the business of supplying information. <u>Christiana</u>, 2002 Del. Super. LEXIS 305, at *23-24; <u>Danforth</u>, 1991 Del. Super. LEXIS 454, at *7-10.

In <u>Danforth</u>, for example, a Delaware superior court explained that a plaintiff must show that the defendant is in the business of supplying information in order to prevail on a negligent misrepresentation claim. 1991 Del. Super. LEXIS 454, at *8. The <u>Danforth</u> court concluded that a general contractor that sold a tangible product – materials with which to build homes – was not in the business of supplying information because it provided incidental design and assembly instructions. <u>Id.</u> at *11. The Delaware Supreme Court agreed with the lower court. 608 A.2d 1194 (Del. 1992). Other Delaware courts agree that this is the sole exception to

-14-

the economic loss doctrine.  See, e.g., Christiana, 2002 Del. Super. LEXIS 305, at *23-24 (holding that Texaco was not in the business of providing information).

Like the Danforth plaintiff, DuPont simply cannot show that DAK is in the business of supplying information.  By DuPont's own admission, DAK is in the business of manufacturing and selling PSF.  (Compl. at ¶ 4.)  Any information that DAK provides in connection with that PSF – such as the pricing information required under the 1999 and 2004 agreements – is incidental or ancillary to the sale of PSF.  Hence, under the standards set forth in Danforth and Christiana, DuPont does not fall within the only exception to the economic loss doctrine recognized by Delaware courts, and cannot meet all of the elements of a tort claim.

In short, DuPont's tort claims are barred by the economic loss doctrine requiring dismissal of DuPont's fraud and negligence claims with prejudice.

3.    DuPont Fails to Meet the Heightened Pleading Burden of Federal Rule of Civil Procedure 9(b).

DuPont's fraud and negligent misrepresentation claims also must be dismissed because DuPont failed to plead with the particularity required by the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires, in pertinent part, that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The rule was designed to (1) afford a defendant fair notice of a plaintiff's claims and the factual grounds upon which those claims rest, and (2) safeguard a defendant's reputation from irreparable damage due to improvident charges of wrongdoing.  Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004).

The District of Delaware applies the requirements of 9(b) to "all cases where the gravamen of the claim is fraud, even though the theory supporting the claim is not technically termed fraud."  See Toner v. Allstate Ins. Co., 821 F. Supp. 276, 283 (D. Del. 1993).  Thus, as

-15-

other federal courts have recognized, because the underlying rationales for requiring heightened pleading for fraud equally apply to negligent misrepresentation, Rule 9(b) applies.[16]    See Hough/Lowe Assocs., Inc. v. CLX Realty Co., 760 F. Supp. 1141, 1145 (E.D. Pa. 1991) (applying 9(b) to negligent misrepresentation claim); Gilmour v. Bohmueller, No. 04-2535, 2005 U.S. Dist. LEXIS 1611, at *8 (E.D. Pa. Jan. 27, 2005) (same); Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("it is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements") (citing Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999)); Arndt v. Prudential Bache Sec., Inc., 603 F. Supp. 674 (S.D. Cal. 1984) (applying Rule 9(b) to negligent misrepresentation claim); Travelers Cas. & Sur. Co. of Am. v. Amoroso, No. C-03-5746-PJH, 2004 U.S. Dist. LEXIS 17604, at *10-11 (N.D. Cal. Aug. 24, 2004) (same); Willson v. Bank of Am., N.A., No. C04-1465-THE, 2004 U.S. Dist. LEXIS 16353, at *6 (N.D. Cal. Aug. 12, 2004) (same); Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436 (M.D.N.C. 2005) (applying Rule 9(b) to negligent misrepresentation claims because underlying rationales for requiring heightened pleading for fraud equally apply to negligent misrepresentation); Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 199 (M.D.N.C. 1997) (same); In re Leslie Fay Cos. Sec. Litig., 918 F. Supp. 749, 766-67 (S.D.N.Y. 1996) (claim for negligent misrepresentation must comply with the pleading requirements of Rule 9(b)); Pitten v. Jacobs, 903 F. Supp. 937, 951 (D.S.C. 1995) (applying Rule 9(b) to negligent misrepresentation claim); Lindner Dividend Fund, Inc. v. Ernst & Young, 880 F. Supp. 49 (D. Mass. 1995) (Rule 9(b) applies to claims of negligent misrepresentation); In re SmarTalk Teleservices, Inc. Sec. Litig., 124 F. Supp. 2d 487, 502 (S.D. Ohio 2000) (Rule 9(b)

---

[16] DAK did not locate any reported Third Circuit decisions on this issue.

applies to negligent misrepresentation claims); MeterLogic, Inc. v. Copier Solutions, Inc., 126 F.

Supp. 2d 1346, 1360-62 (S.D. Fla. 2000) (applying 9(b) to negligent misrepresentation claim);

Gold X-Press Corp. v. Very Beary Venture I, No. 03-60176, 2003 U.S. Dist. LEXIS 19747, at

*7-11 (S.D. Fla. Oct. 3, 2003) (same); Rogers v. Cisco Sys., Inc., 268 F. Supp. 2d 1305, 1310-11

(N.D. Fla. 2003) (same). Here, the gravamen of DuPont's negligent misrepresentation claim is

fraud, because the claim is based on the same operative facts and alleged misrepresentations that

form the basis of DuPont's fraud claim. (See Compl. ¶¶ 46-58). Therefore, DuPont's negligent

misrepresentation claim should satisfy the strictures of 9(b) or be subject to dismissal. See

Toner, 821 F. Supp. at 283.

      To satisfy 9(b), a claim must indicate the date, time, and place of the alleged

fraud, or set forth a similar "alternative means of injecting precision and some measure of

substantiation into their allegations of fraud." Id. at 224 (citation omitted). DuPont must also

specifically allege who made the purported misrepresentations and the general content of those

misrepresentations. See id. (citations omitted). Moreover, although DuPont may generally

allege DAK's state of mind, it must nevertheless allege facts and the specific individual showing

the basis for inferring that a defendant acted with malice or intent. See In re Burlington Coat

Factory Sec. Litig., 114 F.3d at 1418; In re Tyson Foods, Inc. Sec. Litig., No. 01-425-SLR, 2004

U.S. Dist. LEXIS 11122, at *33-34 (D. Del. June 17, 2004) (state of mind element for

corporation must be satisfied by showing that at least one officer or agent of corporation had

requisite scienter); United States v. LBS Bank—N.Y., Inc., 757 F. Supp. 496, 501 n.7 (E.D. Pa..

1990) (corporation can be held to have a particular state of mind only when that state of mind is

possessed by a single individual).

The Complaint is so general and ambiguous that it fails to meet Federal Rule 9(b)'s requirement that DuPont plead its fraud and negligent misrepresentation claims with particularity. Throughout the Complaint, DuPont does nothing more to support its fraud claim than to state conclusory allegations that DAK made certain misrepresentations without setting forth the content and circumstances of these purported misrepresentations. See Lum, 361 F.3d at 223-24 (requiring a particularized showing of facts). For example, taken in the light most favorable to DuPont, DuPont alleges that:

- "Camberos agreed to work with Lukach on these issues. Camberos personally assured Lukach that he would make sure the Sontara business was not being overcharged for PSF. Camberos subsequently informed Lukach that he had determined that the Purchase Price complied with the Supply Contract." (Compl. at ¶ 14.)

- "During this time, Lukach and others from the Sontara business continued to question DAK about whether the Purchase Price complied with the terms of the Supply Contract. They received repeated assurances from DAK[17] that the Sontara business was being overcharged." (Id. at ¶ 19.)

- "Despite DAK's numerous assurances, in 2002-2003, the Sontara business became increasingly concerned that it was being overcharged for PSF. Because the Sontara business was unable to obtain actual pricing data from DAK to determine if DAK was complying with the contract formulas, the Sontara business compared its PSF Purchase Price to the PCI Index." (Id. at ¶ 20.)

- "DAK agreed to reduce the Purchase Price by two to three cents per pound, which would be below the contract formula price." (Id.)

- "Based upon his discussions with DAK at this meeting, Scarborough believed that the Purchase Price that the Sontara business was being charged was consistent with the pricing terms in the Supply Contract. Scarborough further believed that the Sontara business would now receive a special, negotiated discount for the next financial quarter, and that this discount was even lower than the contract price." (Id. at ¶ 23.)

These allegations are the same type of conclusory fraud allegations that have been rejected by the Third Circuit as insufficient to plead fraud with particularity. See, e.g., Lum, 361

---

[17] Tellingly, DuPont does not identify the person at DAK that made such alleged misrepresentation.

-18-

F.3d at 223-24 (affirming dismissal of fraud claim when Plaintiff relied on conclusory allegations that did not inject precision and some measure of substantiation into the fraud allegations); In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1418 (boilerplate and conclusory allegations will not suffice to meet stringent requirements of 9(b).) Nothing in these recitations explains (i) what the "repeated assurances" were, (ii) who at each defendant company made these assurances, (iii) when these assurances were specifically made, or (iv) whether DAK made these assurances with the intent to induce DuPont to act or refrain from acting. (See generally Compl.) DuPont also does not indicate whether these statements were false or whether they were made with the intent to mislead DuPont. (Id.) Nor does DuPont allege any facts indicating that it did not in fact receive a discount off the contract price. (Id.) Indeed, DuPont even fails to allege what the contract price was at the time that the alleged misrepresentation took place. (Id.)

These same problems plague the facts alleged in paragraphs 24 through 26 of the Complaint. (Id. at ¶¶ 24-26.) DuPont alleges that DAK confirmed in a March 2002 meeting that the PSF Purchase Price was consistent with the terms of the 1999 Supply Contract, but refused to provide DuPont with any sales data or proof of its pricing methods. (Id.) Again, DuPont fails to (i) allege any facts indicating that it did not in fact receive the discount specified in the February meeting and (ii) to identify who refused to provide pricing information to DuPont, when such refusals took place, or even whether DAK was obligated to provide such information. (See generally Compl.)

Finally, DuPont alleges several facts relating to the 2004 Supply Contract that do not meet Federal Rule 9(b)'s standards. DuPont asserts, for example, that

> *Upon information and belief*, DAK consistently overcharged the Sontara

-19-

> business for PSF under Section 4 of the Supply Contract until its
> termination on March 31, 2004.   Upon information and belief, DAK
> overcharged the Sontara business under section 8B of the Supply Contract,
> and is continuing to overcharge the Sontara business under Section 8.2 of
> the 2002 Agreement.

(Id. at ¶ 31 (emphasis added).)  This allegation, which is "upon information and belief" and

without any particularized facts, does not satisfy Rule 9(b).  Allegations regarding the elements

of fraud, "if alleged on information and belief, will not satisfy Rule 9(b)'s particularity

requirement." See Toner, 821 F. Supp. at 285.[18]  In connection with the 2004 Supply Contract,

DuPont pleads no facts indicating whether any false representations of fact were actually made,

who made them, when they occurred, the content of those representations, or DAK's state of

mind with respect to those representations.  (See generally Compl.)

DuPont has failed to meet Rule 9(b)'s particularity requirements.   Accordingly,

this Court should dismiss DuPont's fraud and negligent misrepresentation claims under Rule

9(b).

## C.   DUPONT'S BREACH OF CONTRACT, FRAUD, AND NEGLIGENT MISREPRESENTATION CLAIMS ARE ALSO PRECLUDED BY THE STATUTES OF LIMITATIONS.

### 1.   DuPont's Breach of the 1999 Supply Agreement Claims Are Barred by the Applicable Statutes of Limitations.

DuPont alleges in Counts I and II of its Complaint that DAK breached sections 4

and 8B of the 1999 Supply Contract by failing to comply with the pricing provisions set forth in

the contract.  (See Compl. at ¶¶ 36, 40.)  These claims may be subject to a four-year statute of

---

[18] The only exception to the prohibition against "information and belief" pleading is when the factual information is peculiarly within the knowledge or control of the defendant. Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989). However, even if this is the case, DuPont must still allege that that the necessary information is in the control or knowledge of the Defendants and set forth the facts supporting this allegation. Id. DuPont does not do so. (See generally Compl.) Moreover, DuPont cannot meet this standard since it was in the polyester staple business years before DAK was even created and, as a resort, should have pricing information spanning years.

limitations under the U.C.C. or a three-year statute of limitations under the common law.[19]  In
Delaware's version of the UCC, a plaintiff must commence an action for breach of any contract
for the sale of goods within four (4) years after the cause of action has accrued.  6 Del. C. § 2-
725(1); see also Johnson v. Hockessin Tractor, Inc., 420 A.2d 154, 157 (Del. 1980).  A cause of
action accrues when the breach of contract occurs regardless of the plaintiff's lack of knowledge
of the breach.  6 Del. C. § 2-725(2).  Delaware's generally applicable statute of limitations
provides for an even shorter limitations period of three years for contract actions.  10 Del. C.
§ 8106; see also Fineberg v. Credit Int'l Bancshares, Ltd., 857 F. Supp. 338, 350 (D. Del. 1994).
Like the UCC, a breach of contract action under Section 8106 accrues at the time of the breach.
Allstate Ins. Co. v. Spinelli, 443 A.2d 1286, 1292 (Del. 1982).  In either case, DuPont's claims as
set forth in Count I and II are time barred.

Here, the face of the Complaint makes clear that the statute of limitations has
expired on the DuPont's claims for breach of the 1999 Supply Contract.[20]  DuPont claims that
DAK "has been overcharging DuPont *throughout* the life of the contract."  (See Compl. ¶ 1
(emphasis added).)  Thus, by DuPont's own admission, the alleged breach occurred at the
beginning stages of the contract term in 1999, resulting in DuPont's claims for breach of the
1999 Supply Contract accruing *more than* four (4) years before this case was filed.  See 6 Del. C.
§ 2-725(1); 6 Del. C. § 2-725(2).  Under the applicable statute of limitations, DuPont's breach of
contract claim relating to the 1999 Agreement is barred.  Id.

---

[19] Although the CISG applies to these contract claims, the treaty is silent as to the applicable statute of limitations.
Accordingly, under paragraph 7(2) of the CISG, this Court is able to look to Delaware law to determine the
applicable statute of limitations.  See CISG, 15 U.S.C. App. at art. 7(2); see also Delchi Carrier SpA v. Rotorex
Corp., 71 F.3d 1024, 1027 (2d Cir. 1995) (citing article 7(2) and the UCC, article 2).

[20] Importantly, DAK does not have to raise the statute of limitations as an affirmative defense under the so-called
"Third Circuit Rule."  The rule states that if the expiration of the statute of limitations can be determined from the
face of the complaint, it is appropriate to assert the statute of limitations defense in a motion to dismiss.  Robinson v.
Johnson, 313 F.3d 128, 135 (3d Cir. 2002).

2.    DuPont's Fraud and Negligent Misrepresentation Claims Also Should be
      Dismissed Because They are Precluded by the Delaware Statute of Limitations.

DuPont's fraud and negligent misrepresentation claims also should be dismissed

because the statute of limitations has expired. Section 8106 of the Delaware Code provides that

the statute of limitations for tort claims—including fraud and negligent misrepresentation—is

three (3) years from the date the causes of action accrue. 10 Del. C. § 8106; see also Coleman v.

PricewaterhouseCoopers, LLC, 854 A.2d 838, 842 (Del. 2004). Generally, a cause of action

arising in tort "accrues" at the time the tort is committed. See id. at 842. The fact that DuPont

may contend that it did not know a cause of action existed does not toll the statute of limitations

unless DuPont can show that DAK fraudulently concealed the existence of a cause of action or

injury or the existence of a claim is inherently unknowable and DuPont is blamelessly ignorant.[21]

See id.

DuPont alleges that in 2000, Lukach "presented Camberos with several concerns

about the joint venture's compliance with the Supply Contract." (Compl. at ¶ 13.) Additionally,

DuPont alleges that "Lukach asked how the joint venture was calculating the Purchase Price"

and "wanted to know why competitors of DAK were offering to sell PSF to the Sontara business

at a price that was much lower than the Purchase Price. (Id.) Finally, DuPont alleges that

"Camberos personally assured Lukach that he would make sure the Sontara business was not

being overcharged for PSF. Camberos subsequently informed Lukach that he had determined

that the Purchase Price complied with the Supply Contract." (Id. at ¶ 14.) These facts relate to

meetings that occurred in 2000, and were incorporated by reference into DuPont's breach of

contract and fraud claims. (Id. at ¶¶ 46, 52.) Given these allegations, there can be no dispute

---

[21] As discussed more fully below in subsection 3, DuPont has not pleaded and cannot demonstrate that it is entitled
to toll the statute of limitations

that DuPont knew or had reason to know that the alleged fraud was committed in 2000, more than three (3) years before DuPont filed suit. (Id. at 10.) Accordingly, the statute of limitations had expired.

Likewise, the statute of limitations for the negligent misrepresentation claim accrued in 2000, when the Complaint indicates that DAK made several representations in connection with the agreement. (Compl. at ¶¶ 13-14.) These representations are included as damages in Count V of the Complaint. Thus, the tort of negligent misrepresentation, as set forth in DuPont' own pleading, accrued in 2000, and the limitations period extended through 2003. In short, there can be no dispute that the statute of limitations had expired on this tort claim by the time the Complaint was filed on December 10, 2004.

3.     DuPont Cannot Argue that the Statute of Limitations Should be Tolled.

DuPont may argue that their claims fall within one of the exceptions that toll the statute of limitations: (1) DAK fraudulently concealed information that indicated that a cause of action existed; (2) the existence of the cause of action was inherently unknowable and DuPont was blamelessly ignorant that the cause of action existed; or (3) in connection with the breach of contract claims, DAK's actions were a continuing breach of the 1999 Agreement. See Coleman, 854 A.2d at 842; Lecates v. Hertrich Pontiac Buick Co., 515 A.2d 163, 176 (Del. Super. Ct. 1986); In re Burger, 125 B.R. 894, 901 (Bankr. D. Del. 1991) (applying Delaware law). DuPont cannot demonstrate that it is entitled to toll the statute of limitations for the contract, fraud, and negligent misrepresentation claims under any recognized exception in Delaware law for at least two significant reasons.

First, to assert fraudulent concealment, DuPont must prove an affirmative act with the intent to prevent inquiry or knowledge of injury. Studiengesellschaft Kohle, mbH v.

-23-

Hercules, Inc., 748 F. Supp. 247, 253 (D. Del. 1990). DuPont must also demonstrate that it could not have discovered the existence of an injury through reasonable diligence. See id. at 252 (statute of limitations is tolled until such time that a "person of ordinary intelligence and prudence would have facts sufficient to put them on 'inquiry which, if pursued, would lead to the discovery' of the injury."); see also Coleman, 854 A.2d at 842 ("The statute of limitations begins to run upon the discovery of facts 'constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery' of such facts."). DuPont's statements in paragraphs 13 and 14 of the Complaint unequivocally demonstrate that DuPont was aware that it had potential claims against DAK:

> As of 2000, "Lukach asked how the joint venture was calculating the Purchase Price. In particular, Lukach wanted to know why competitors of DAK were offering to sell [polyester staple fiber] to the Sontara® business at a price that was much lower than the Purchase Price." (Compl. at ¶ 13.)

> Also as of 2000, "Camberos agreed to work with Lukach on these issues. Camberos personally assured Lukach that he would make sure the Sontara business was not being overcharged for PSF. Camberos subsequently informed Lukach that he had determined that the Purchase Price complied with the Supply Contract." (Id. at ¶ 14.)

Both of these statements put DuPont "on notice" that it had potential causes of action regarding the pricing provisions of the agreements at issue. Moreover, DuPont could easily have determined whether it was injured by virtue of its ownership interest in the DAK joint venture and its access to documents. (See section IV(B((1), *supra* at 6-10.)

        Second, DuPont does not meet the requirements of Delaware law for a "continuing breach" exception. Generally, the principle of continuing breach only applies when full damages cannot be determined until the enterprise ends. Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co., 484 F. Supp. 1375, 1389-90 (D. Del. 1980) (reasoning that an insurance

-24-

contract with an indemnification provision created a continuing obligation to defend, and the total amount of damages could not be determined until the underlying litigation creating the obligation was completed). However, if the amount of damages can be ascertained as a result of a breach of contract, then the principle of continuing breach does not apply. See Hercules, 748 F. Supp. at 251 (holding that a Delaware court found that the statute of limitations started to run when payments were due on a contract that called for annual payment of patent royalties).

This case is analogous to Hercules. The 1999 Supply Contract calls for the annual delivery of set quantities of PSF to Sontara locations at a defined price. (See Compl. at ¶¶ 6-10.) Thus, the statute of limitations began to run when the PSF was delivered at prices that were inconsistent with the 1999 Agreement, which DuPont claims occurred throughout the life of the contract, beginning in *1999*. (See Compl. at ¶ 1.) Thus, DuPont has no basis to avoid the applicable statute of limitations and Counts I, II, IV, and V must be dismissed.

## V.    DEFENDANTS' MOTION TO STAY THE ANSWER DEADLINE AND FURTHER ACTION ON DUPONT'S CLAIMS FOR BREACH OF THE 2004 SUPPLY CONTRACT

While the Court is considering this Motion, DAK should not be required to file an answer or otherwise respond to Count III of the Complaint asserting that DAK breached section 8.2 of the 2004 Supply Contract. In many jurisdictions, partial motion to dismiss pursuant to Federal Rule 12(b)(6) enlarges the time to file an answer under Federal Rule 12(a). See, e.g., Circuit City Stores, Inc. v. Citgo Petroleum Corp., No. 92-CV-7394, 1994 U.S. Dist. LEXIS 12634, at *12-13 (E.D. Pa. Sept. 7, 1994) (holding that a "a partial 12(b) motion enlarges the time to file an answer," because any other approach would require duplicative sets of pleadings and would cause confusion over the proper scope of discovery during the motion's pendency"); Finnegan v. Univ. of Rochester Med. Ctr., 180 F.R.D. 247, 249-50 (W.D.N.Y. 1998) (agreeing

-25-

with the majority of courts that a motion to dismiss that addressed part of a complaint suspends the time to respond to the entire complaint); Oil Express Nat'l, Inc. v. D'Alessandro, 173 F.R.D. 219, 220 (N.D. Ill. 1997) ("The majority of courts that have considered this question . . . have concluded that a party does not need to file an answer while a partial motion to dismiss is pending."); Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd., 136 F.R.D. 485, 486-87 (E.D. Wis. 1991) (holding that a partial motion to dismiss under Federal Rule 12(b) enlarges the time to file an answer); Porter v. United States Dept. of Army, No. 93-C-6900, 1995 U.S. Dist. LEXIS 10864, at *11-12 (N.D. Ill. July 14, 1995) (holding that a timely filed 12(b) motion alters the statutory period for filing an answer for the entire complaint and not just to answers for the portion of the complaint the motion to dismiss addresses).

Although the Third Circuit has not considered this issue in a reported decision, this Court should adopt the reasoning used by other federal districts to conclude that DAK should not have to file an answer responding to Count III until this Motion has been decided. Adopting a rule that would stay the need to file an answer on one claim would prevent duplicative pleadings if this Court ultimately denied DAK's 12(b)(6) motion to dismiss. See Circuit City Stores, 1994 U.S. Dist. LEXIS 12634, at *12-13; Oil Express, 173 F.R.D. at 220; Brocksopp Eng'g, 136 F.R.D. at 486-87. Further, such a rule would prevent confusion over the scope of discovery while the Motion is pending. See id. A stay of any further proceeding on the 2004 Supply Contract is particularly appropriate when, as in this case, DuPont has alleged facts regarding alleged misrepresentations that are intertwined with all of the DuPont's contractual claims. Accordingly, given the fact that DuPont essentially asserts multiple claims that have the same measure of damages and the same set of allegations regarding DAK's purported representations, the likelihood of confusion in discovery and duplicative pleadings is enhanced if

-26-

DAK must file an answer to Count III of the Complaint.    Therefore, this Court should grant

DAK's request for a stay on the answer deadline pending a ruling on this Motion and any further

action on DuPont's claim for breach of the 2004 Supply Contract.[22]

---

[22] If this Motion to Stay is denied, Defendants respectfully ask that the Court allow them at least twenty (20) days
from the entry of order denying such stay.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

For all the above reasons, Defendants respectfully request that this Court grant this Motion, its motion to stay as to Count III of the Complaint, and any further relief to which they may be justly entitled.

Dated: March 4, 2005

William J. Wade (#704)
(Wade@rlf.com)
Matthew W. King (#4566)
(King@rlf.com)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700

ATTORNEYS FOR DEFENDANTS DAK
AMERICAS LLC AND DAK FIBERS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March 2005, I electronically filed and hand delivered the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

**VIA HAND DELIVERY**

Kevin R. Shannon (#3137)
Erica L. Niezgoda (#3986)
Potter Anderson & Corroon LLP
Hercules Plaza, Sixth Floor
1313 N. Market St., P.O. Box 951
Wilmington, DE 19899

Matthew W. King (#4566)