IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E.I. du Pont de Nemours and Company, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 05-71-KAJ |
| v. | ) ) ) | NON-ARBITRATION |
| DAK Americas LLC and DAK Fibers LLC, | ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF DUPONT'S MOTION TO REMAND

Pursuant to 28 U.S.C. § 1447(c), plaintiff E.I. du Pont de Nemours and Company ("DuPont") submits this memorandum in support of its motion to remand this case to the Superior Court of the State of Delaware in and for New Castle County, where the Complaint was initially filed. As grounds for its motion, DuPont submits that defendants DAK Americas LLC and its wholly-owned subsidiary, DAK Fibers LLC (collectively, "DAK"), improperly removed the Complaint to federal court on the grounds of federal question jurisdiction. Accordingly, this Court lacks subject matter jurisdiction over the Complaint.

### PRELIMINARY STATEMENT

The Complaint asserts breach of two contracts, both of which were signed by Delaware companies whose businesses are located in Tennessee, North Carolina, and South Carolina. (Complaint ¶¶ 2-4.) The Complaint also asserts tort claims against DAK over false statements they made to DuPont during telephone conversations and in personal meetings that took place in Delaware, Tennessee, and North Carolina. (*Id.* ¶¶ 46-58.)

DAK's Notice of Removal states that this Court has federal question jurisdiction over DuPont's breach of contract claims. DAK mistakenly argues that the United Nations Convention on the International Sale of Goods ("CISG"), an international treaty, governs the adjudication of two of the breach of contract counts in the Complaint, and establishes federal question jurisdiction. (Notice of Removal at 2-3.) DAK requests that this Court exercise supplemental jurisdiction over the remaining four counts in the Complaint. (*Id.* at 10.)

DAK's Notice reflects a fundamental misunderstanding of the scope of the CISG. The express terms of the CISG include several conditions that must be met before the CISG will govern a particular contract claim. DAK's Notice points out that DuPont and DAK have entered into other contracts with other parties, including DAK's corporate parent in Mexico. DAK argues that the confluence of these contractual relationships demonstrate that "the 1999 Supply Contract and the transactions between DuPont and defendants were overwhelmingly international in nature". (*Id.* at 3.) However, the factors cited by DAK are irrelevant under the CISG.

The undisputed facts confirm that the CISG is inapplicable to DuPont's breach of contract claims. ***First***, the CISG applies only to contract claims when the parties to the contracts have <u>places of business in different international States</u>. The CISG does not govern where, as here, both of the contracting parties' places of business are located within the United States. Although DAK's Notice of Removal identifies multiple contracts, only one contract is relevant to the jurisdictional question – the October 1, 1999 polyester staple fiber supply agreement ("Supply Contract") identified in Counts I and II of the Complaint.[1] (Complaint ¶¶ 34-41.)

---

[1] DAK concedes that the CISG does not govern the April 1, 2004 supply agreement identified in Counts III and IV of the Complaint. (*See* Notice of Removal at 9.)

Only two parties signed this contract – DuPont, on behalf of its Sontara® business, and DuPont-Akra LLC, the predecessor company to DAK Fibers. (*See* Notice of Removal, at n.3, and at Tab 3.) Both the Sontara® business and DAK Fibers are headquartered in the United States, and both companies' primary manufacturing facilities are located in the United States. (*See infra* Section B.) Therefore, the CISG does not apply here.

*Second,* DuPont's recent construction of a second manufacturing facility in Asturias, Spain, and the purchase of polyester staple fiber on behalf of the Asturias facility, does not implicate the CISG. The CISG states that where a party to a contract has more than one place of business, the CISG applies only when the place of business with "the closest relationship to the contract and its performance" is in a different State. In this case, the Asturias facility was not yet operational at the time the parties executed the Supply Contract, and did not become fully operational until approximately 2001. (*See* Declaration of Franklin Gomes Da Silva, attached as Exhibit A, at ¶¶ 4-5; Declaration of Carl J. Lukach, attached as Exhibit B, at ¶¶ 9-11.) Moreover, during the course of the Supply Contract, the Sontara® business purchased less than 15 percent of its polyester staple fiber requirements for the Asturias facility. (*See* Da Silva Declaration, Exhibit A, at ¶¶ 7-8.) Applying these factors to the CISG, Asturias is not Sontara's® "place of business". Instead, Sontara's® place of business is Old Hickory, Tennessee, the location of its headquarters and primary manufacturing facilities. (*See infra* Section C.)

*Third*, DAK points to the fact that a minuscule amount of polyester staple fiber (less than 1% of the total supply) was shipped to DuPont from a company in Mexico, and that these purchases were made pursuant to the Supply Contract. (See Notice of Removal, Tab 7.) These

paltry sales, accomplished through a third party, do not establish an alternative place of business for DAK Fibers under the CISG. (*See infra* Section C.)

**Fourth**, because the CISG does not govern the Supply Contract, there was no need for the parties to the Supply Contract to opt out of the CISG. DAK points out that the parties did include such an opt-out provision in a contract signed in 2004, 5 years after the initial Supply Contract was executed. However, the presence or absence of a CISG opt-out provision becomes relevant only if the CISG would otherwise apply. That is not the case here. (*See infra* Section E.)

Because the CISG is inapplicable to DuPont's breach of contract claims against DAK Fibers, the Complaint does not raise any questions arising under federal law. Accordingly, this Court lacks subject matter jurisdiction over the Complaint, and this case should be remanded back to the Superior Court of the State of Delaware for New Castle County.

## ARGUMENT

### A. The CISG Applies Only When the Contracting Parties' Places of Business are Located in Different International States

The CISG was ratified by the United States on December 11, 1986 and became effective on January 1, 1988. It "applies to contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States." U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods: Official English Text, 15 U.S.C. App., art. 1(1)(a). *See, e.g., Chateau des Charmes Wines Ltd. v. Sabate USA Inc., et al.,* 328 F.3d 528, 530 (9th Cir. 2003) (applying CISG to contract executed by Canadian company, French company, and American company); *MCC-Marble Ceramic Center, Inc. v. Ceramica Nuova D'Agostino, S.P.A.,* 144 F.3d 1384, 1387 n.6 (11th Cir. 1998) (applying CISG to dispute between Florida company and Italian company); *Unisor Industeel v. Leeco Steel*

*Prods., Inc.*, 209 F. Supp. 2d 880, 884 (N.D. Ill. 2002) (applying CISG to dispute between French company and American company).

There is little case law addressing the CISG. *MCC-Marble Ceramic Center, Inc.*, 144 F.3d at 1389 ("Despite the CISG's broad scope, surprisingly few cases have applied the Convention in the United States"); *Claudia v. Olivieri Footwear Ltd.*, 1998 U.S. Dist. LEXIS 4586 at *4 (S.D.N.Y. 1998) ("The case law interpreting and applying the CISG is sparse."). Significantly, every decision addressing the CISG has involved contracts involving at least one party whose business was located outside the United States. *See id*; *see also Filanto, S.p.A. v. Chilewich Int'l Corp.*, 789 F. Supp. 1229, 1237 (S.D.N.Y. 1992).

**B.     The CISG is Inapplicable Here Because the Places of Business of DuPont and DAK are in the United States**

DAK does not, and cannot, dispute that the two parties to the Supply Contract – DuPont and DAK Fibers' predecessor – are Delaware companies. (*See* Notice of Removal, Tab 3.) In addition, DuPont's Sontara® business and DAK Fibers are headquartered in the United States and base their manufacturing facilities here.

**1.     DuPont's Sontara® business is located in Tennessee.** The Sontara® business is headquartered in Old Hickory, Tennessee. (Complaint ¶ 2; *see also* Lukach Declaration, Exhibit B, at ¶ 4.) The Global Director of the Sontara® business is based in Old Hickory. The other primary business leaders for the Sontara® business all work in Old Hickory. Other representatives of the Sontara® business work in DuPont's offices in Wilmington, Delaware. (*Id.* ¶ 6.)

The Old Hickory site is also the home of Sontara's® manufacturing facilities (Lukach Declaration, Exhibit B, at ¶ 4.) The Sontara® business purchases polyester staple fiber from DAK to produce nonwovens fabrics. These fabrics are manufactured in Sontara's® Old

Hickory, Tennessee facilities. (*Id.* ¶ 4.) Purchasing invoices submitted by DAK in support of DAK's Notice of Removal confirm that DAK shipped the polyester staple fiber to Sontara® facilities in Old Hickory, Tennessee. (Notice of Removal, Tabs 6, 7.)

    2.    **DAK Fibers' place of business is North Carolina.** DAK Fibers' business is also located in the United States. DAK Fibers is headquartered in Charlotte, North Carolina.[2] (*See* Complaint ¶¶ 3-4; Notice of Removal, Tabs 6-7; *see also* DAK Fibers Internet web page, http://www.dakfibers.com/fibers/overview.htm, attached as Exhibit C.)

During the performance of the 1999 Supply Contract, DAK Fibers manufactured polyester staple fiber at two facilities, located in Cape Fear, North Carolina, and Cooper River, South Carolina. Pursuant to the 1999 Supply Agreement, DAK Fibers shipped polyester staple fiber from its facilities at Cape Fear and/or Cooper River, to the Sontara® facilities in Old Hickory, Tennessee. (*See* Lukach Declaration, Exhibit B, at ¶ 8; June 14, 2001, DAK Press Release, attached as Exhibit D.)

In arguing for federal jurisdiction, DAK's Notice of Removal emphasizes that, between 1999 and 2001, DAK Fibers was co-owned by a Mexican company. DAK further notes that since 2001, DAK Fibers is fully owned and controlled by a Mexican company.[3] DAK argues

---

[2]    Charlotte, North Carolina, continues to serve as the headquarters for DAK, as further evidenced by the affidavit of Hector Camberos, president of defendant DAK Americas. The affidavit was signed in Mecklenberg County, North Carolina. (*See* Exhibit A to Notice of Removal.)

[3]    Defendants' brief makes much of the fact that the Complaint identifies Alpek S.A. de C.V. ("Alpek") as the owner of DAK Americas, the parent company of DAK Fibers. (Notice of Removal at 7.) Defendants contend that Polimor S.A. de C.V. ("Polimor"), not Alpek, purchased DAK Fibers. This argument is a red herring because Polimor and Alpek are related entities. (*See* Notice of Removal, Tab 4 (evidencing that the same two individuals signed contract on behalf of both Polimor and Alpek).) In fact, a press release issued in 2001 by DAK identifies Alpek, not Polimor, as the owner of DAK, and DAK Americas' own web site states

(continued...)

that the foreign citizenship of DAK Fibers' corporate parent brings the Supply Contract within the scope of the CISG. (Notice of Removal at 6.) This argument contradicts the express terms of the CISG, which states:

> Neither the nationality of the parties nor the civil or commercial character of the parties or of the contract is to be taken into consideration in determining the application of this Convention.

*See* 15 U.S.C. App., art. 1(3). Under the CISG, the citizenship of DAK Fibers is irrelevant to the jurisdictional question presented here; instead, it is the ***place of business*** of DAK Fibers that controls the application of the CISG. Because the place of business of both DuPont and DAK Fibers is the United States, the CISG by its own terms is inapplicable here.

The cases cited by DAK on this point are irrelevant to the question of whether the CISG creates federal question jurisdiction. In those cases, the citizenship of the parties was at issue because the asserted basis for federal jurisdiction was diversity of citizenship. (*See* Notice of Removal at 6, citing *Transamerica Corp. v. Reliance Ins. Co.*, 884 F. Supp. 133, 139 (D. Del. 1995); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990).) DAK's notice of removal is based exclusively upon federal question jurisdiction under the CISG, not diversity of citizenship. (Notice of Removal at 2.) Moreover, removal on diversity grounds is not available in this case, because: (1) DuPont and defendants are all Delaware companies and therefore there is no diversity; and (2) the removal statute prohibits removal on diversity grounds if any of the defendants is "a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b); *see also Medical Professional Liability Catastrophe Fund v. Pic Insurance Group, Inc.*, 1997 U.S.

---

(...continued)
that it is now "fully owned by Alpek." (*See* DAK Press Release, Exhibit D; DAK web page, Exhibit C.)

Dist. LEXIS 10395, at *7, Civil Action No. 97-4229 (E.D. Pa. July 18, 1997). Because there is no diversity jurisdiction, and no federal question jurisdiction, this case must be remanded to state court.

### C. Purchases Made On Behalf of DuPont's Asturias, Spain Plant Do Not Implicate the CISG

DAK points out that the Supply Contract contemplates the purchase of polyester staple fiber by DuPont on behalf of a manufacturing facility located in Asturias, Spain. DAK argues that these purchases bring the Supply Contract within the scope of the CISG. (Notice of Removal at 7.)

DuPont does not dispute that a small percentage of its purchases of polyester staple fiber were shipped to a second manufacturing facility located in Asturias. (Da Silva Declaration, Exhibit A, at ¶¶ 4-6; Lukach Declaration, Exhibit B, at ¶¶ 4-6.) However, the shipment of materials to the Asturias manufacturing facility does not implicate the CISG because Sontara's® primary business location remains in Old Hickory, Tennessee.

The CISG states that "if a party has more than one place of business, the place of business is that which has the closest relationship to the contract and its performance." 15 U.S.C. App., art. 10; *Asante Techs., Inc. v. PMC-Sierra, Inc.* 164 F. Supp. 2d 1142 (N.D. Cal. 2001). In *Asante Techs.*, defendant was a Delaware corporation and had a small office in Portland, Oregon. Defendant sought to remove the case under the CISG on the grounds that, at all relevant times, defendant's "corporate headquarters, inside sales and marketing office, public relations department, principal warehouse, and most design and engineering functions were located in Burnaby, British Columbia, Canada." *Id.* at 1145. Defendant sold its products to plaintiff through an American distributor. In addition, the Complaint alleged that defendant made misrepresentations to plaintiff from its Canadian offices, and that plaintiff directed

correspondence to defendant's Canadian address. The court concluded that based on these facts, "Defendant's place of business that has the closest relationship to the contract and its performance is British Columbia, Canada," and therefore, "the contract at issue in this litigation is between parties from two different Contracting States," which "implicates the CISG." *Id.*

By comparison, in the present case, the primary place of business for DuPont's Sontara® business is in the United States, not Spain. DuPont's corporate headquarters is in Wilmington, Delaware, and the Sontara® business's headquarters and manufacturing facilities are located in Tennessee. (Lukach Declaration, Exhibit B, at ¶¶ 3-4, 6.) Negotiations between DuPont and DAK Fibers in connection with the Supply Contract took place at Sontara's® facilities in Tennessee, not in Asturias. (*Id.* ¶¶ 5, 7; *see also* Complaint ¶ 27.)

Moreover, the Asturias, Spain facility was not even operational at the time of the 1999 contract. DuPont attempted to open the Asturias plant in 1999 and in 2000, but was forced to shut down the plant both times. The Asturias location did not become operational until 2001. (Da Silva Declaration, Exhibit A, at ¶ 4-6; Lukach Declaration, Exhibit B, at ¶¶ 9-11.) Since 2001, purchases of polyester staple fiber on behalf of the Asturias facility represent approximately 15 percent of the Sontara® business's total purchases; the remaining 85 percent of polyester staple fiber purchases were shipped to the Sontara® facilities in Old Hickory, Tennessee. (Da Silva Declaration, Exhibit A, at ¶¶ 7-8.) Based on these facts, the Asturias facility could not have had the closest relationship to the negotiation or performance of the Supply Contract.

The undisputed evidence demonstrates that the CISG does not govern the Supply Contract. Both parties to the Supply Contract – DuPont and the predecessor to DAK Fibers – have places of business in the United States. DuPont's place of business under the CISG is the

United States, in Delaware and Tennessee. Similarly, DAK's place of business under the CISG is the United States, in North Carolina and South Carolina. DuPont's second Sontara® facility in Asturias, Spain, does not change this analysis, in that it is not the location with the "closest relationship" to the Supply Contract. The Complaint does not allege that any contract negotiations took place there, or that any representations were made there. Instead, all contract negotiations took place in Tennessee and North Carolina, where the parties are headquartered. Moreover, more than 85 percent of all shipments of polyester staple fiber were made between DAK's facilities in the Carolinas and DuPont's facilities in Tennessee. The CISG is inapplicable under these facts.

### D. DuPont's Minuscule Purchases of Polyester Staple Fiber From a Mexican Company Do Not Implicate the CISG

DAK further argues that the CISG should be applied because DuPont purchased a small amount of polyester staple fiber from a Mexican company. (Notice of Removal at 7.) Mr. Camberos's affidavit states that DAK Fibers arranged for the shipments of polyester staple fiber from the Mexican company to DuPont under the Supply Contract. (Notice of Removal, Exhibit A, ¶ 9.) It is unclear from this affidavit whether DAK Fibers was acting as an agent of the Mexican company in accomplishing these transactions. (*See id.*) In any event, Mr. Camberos's affidavit states that DuPont purchased "hundreds of thousands of pounds" of polyester staple fiber that originated in Mexico. (*See id.*) During the course of the Supply Contract, the Sontara® business purchased hundreds of millions of pounds of polyester staple fiber from DAK Fibers. (Da Silva Declaration, Exhibit A, at ¶ 8.)  Therefore, the Mexican purchases identified in Mr. Camberos's affidavit represent less than one percent of DuPont's total purchases of polyester staple fiber.  This is insufficient to establish a foreign place of business under the CISG.

### E. The Lack of a CISG Opt-Out Provision is Irrelevant

DAK argues that if the parties intended to prevent the application of the CISG to the Supply Contract, the parties would have expressly opted out of the CISG. DAK points out that a 2004 contract between DuPont and DAK Fibers includes a provision opting out of the CISG, and argues that the parties' inclusion of the opt-out provision in the 2004 contract demonstrates that the parties expressly decided *not* to opt out of the CISG in the 1999 contract. This is wrong.

Courts addressing the application of the CISG have followed a two-step process. ***First***, the court determines whether the parties' places of business are in different States. ***Second***, if the parties' places of business are in different States, the court proceeds to the second step, which is to determine whether the parties' contract contains a provision opting out of the CISG. If there is no opt-out provision, the CISG will be applied to the contract claims. *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 336 (5th Cir. 2003); *St. Paul Guardian Ins. Co., et al. v. Neuromed Med. Sys. & Support, et al.*, 2002 WL 465312, at *7-8 (S.D.N.Y. 2002).

For example, in *BP Oil*, the parties to the relevant contract had places of business in the United States and Ecuador. The parties disputed whether the laws of Ecuador or the CISG applied to their contract claims. *Id.* at 334. The court concluded that the CISG applied because the parties' places of business were in different international States ***and*** the parties chose not to opt out of the CISG. *Id.* Similarly, in *St. Paul Guardian Ins. Co.*, the contract was between a German company and an American company. *Id.* The parties in *St. Paul* conceded that the CISG governed the dispute under German law, because the contract contained no express opt-out provision. *Id.*

In both of these cases, the parties to the relevant contracts were from different States. In *BP Oil*, one of the parties to the contract was an Ecuadoran company whose business was located in Ecuador. In *St. Paul Guardian*, one of the parties to the contract was a German company whose business was located in Germany. Therefore, it was necessary for the courts in both cases to proceed to the next step of the analysis, and determine whether the parties' contracts contained a provision opting out of the CISG. Because neither contract contained such an opt-out provision, the courts concluded that the CISG must be applied to the parties' contract claims.

By comparison, in this case, both of the parties to the Supply Contract – DuPont and DAK Fibers – were American companies, and the businesses of both parties are located in the United States. Therefore, the CISG cannot govern the Supply Contract. In contrast to *BP Oil and St. Paul Guardian*, there is no need here to make the secondary determination of whether the Supply Contract contains a CISG opt-out provision, and the absence of such a provision in the Supply Contract is irrelevant.

## CONCLUSION

DuPont requests that the Court remand this case to the Superior Court of the State of Delaware in and for New Castle County.

| | |
|---|---|
| Of Counsel: | **POTTER ANDERSON & CORROON LLP** |
| **CROWELL & MORING LLP** | |
| | Kevin R. Shannon (No. 3137) |
| Kent A. Gardiner | (kshannon@potteranderson.com) |
| Aimée D. Latimer | David E. Moore (No. 3983) |
| Stephen Martin | (dmoore@potteranderson.com) |
| 1001 Pennsylvania Avenue, N.W. | Hercules Plaza, Sixth Floor |
| Washington, D.C. 20004 | 1313 N. Market St., P.O. Box 951 |
| Telephone: (202) 624-2500 | Wilmington, DE 19899-0951 |
| | (302) 984-6000 |
| Dated: March 24, 2005 | |
| 675420 | *Counsel for Plaintiff* |
| | *E. I. du Pont de Nemours and Company.* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March, 2005, I electronically filed and hand delivered the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

William J. Wade, Esquire (#704)
Matthew W. King, Esquire (#4566)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19899

_____
Kevin R. Shannon (#3137)