## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E.I. du Pont de Nemours<br>and Company, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-71-KAJ |
| | ) | |
| v. | ) | |
| | ) | NON-ARBITRATION |
| DAK Americas LLC and | ) | |
| DAK Fibers LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Kevin R. Shannon (#3137)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza, Sixth Floor
1313 N. Market St., P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
kshannon@potteranderson.com
dmoore@potteranderson.com

Of Counsel:

Kent A. Gardiner
Aimée D. Latimer
Stephen Martin
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 624-2500

*Attorneys for Plaintiff,*
*E.I. du Pont de Nemours and Company*

Dated:  April 14, 2005

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ....................................................................................1

STATEMENT OF FACTS ........................................................................................4

ARGUMENT ..........................................................................................................4

    A.    Standard of Review..................................................................................4

    B.    The Complaint Allegations Sufficiently Plead the Element of Justifiable Reliance............................................................................6

    C.    The Economic Loss Doctrine is Inapplicable to DuPont's Claims..............9

        1.    DAK's Defense of the Economic Loss Rule is Unsupported by Controlling Delaware Law.................................................9

        2.    Assuming *Arguendo* that the Economic Loss Doctrine Applied to DuPont's Tort Claims, an Exception to the Doctrine is Applicable Here............................................12

    D.    Counts IV and V of DuPont's Complaint Meet the Heightened Pleading Requirement Fed. R. Civ. P. 9(b)................................................13

    E.    DuPont's Claims Are Not Barred by the Statute of Limitations ...............15

CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

**CASES**                                                                                                 **Page**

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.,*
    263 F.3d 239 (3d Cir. 2001)........................................................................................................5

*Aikens v. Baltimore & Ohio R.R. Co.,*
    501 A.2d 277 (Pa. Super. Ct. 1985).........................................................................................11

*Algernon Blair Group, Inc. v. Corneal,*
    Civil Action No. 86-4465, 1988 U.S.Dist. LEXIS 1497 (E.D. Pa. 1988) ......................................7

*Bartholomew v. Fischel,*
    782 F.2d 1148 (3d Cir. 1986)..............................................................................................4, 9

*Bell Helicopter Textron Inc. v. Tridair Helicopter, Inc.*
    982 F. Supp. 318 (D. Del. 1997).............................................................................................10

*Budgetel Inns, Inc. v. Micros System, Inc.,*
    8 F. Supp. 2d 1137 (E.D. Wis. 1998)......................................................................................11

*Burger v. Level End Dairy Investors,*
    125 B.R. 894 (D. Del. 1991)..............................................................................................16, 17

*In re Burlington Coat Factory Sec. Litigation,*
    114 F.3d 1410 (3d Cir. 1997)..............................................................................................4, 6

*Castrol Indus. North America Inc. v. Airosol Co. Inc.,*
    No. 01 C 1007, 2002 U.S. Dist. LEXIS 17192 (N.D. Ill. Sept. 13, 2002)....................................11

*Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Marketing Inc.,*
    2002 Del. Super. LEXIS 305 (Del. Super. Ct. June 13, 2002) ...............................................11, 12

*Coleman v. PricewaterhouseCoopers, LLC,*
    854 A.2d 838 (Del. 2004) ....................................................................................................17

*Conley v. Gibson,*
    355 U.S. 41 (1957)................................................................................................................9

*Danforth v. Acorn Structures, Inc.,*
    608 A.2d 1194 (Del. 1992) ................................................................................................9, 10

*Danforth v. Acorn Structures, Inc.*,
  CA No. 90C-JN-30, 1991 Del.Super. LEXIS 454 (Del. Super. Ct. Nov. 22, 1991) ......................12

*David Pflumnn Paving & Excavating, Inc. v. Foundation Serv. Co.*,
  816 A.2d 1164 (Pa. Super. Ct. 2003)............................................................................................11

*DeBakey Corp. v. Raytheon Serv. Co.*,
  C.A. No. 14947, 2000 Del.Ch. LEXIS 129 (Del. Ch. Aug. 25, 2000) ...........................................7

*Guardian Construction Co. v. Tetra Tech Richardson, Inc.*,
  583 A.2d 1378 (Del. Super. Ct. 1990)........................................................................................12

*Hughes v. Long*,
  242 F.3d 121 (3d Cir. 2001)........................................................................................................10

*International Federal Insurance Co. v. Mattes Electric, Inc.*,
  2002 Del.Super. LEXIS 441 (Del. Super. Ct. June 27, 2002) ......................................................11

*Metropolitan Communication Corp. BVI v. Advanced MobileComm Techs. Inc.*,
  854 A.2d 121 (Del. Ch. 2004)........................................................................................................7

*N.A.M.I. v. Essex County Board of Freeholders*,
  91 F.Supp.2d 781 (D.N.J. 2000) ...................................................................................................5

*Northwestern Public Service v. Union Carbide Corp.*,
  115 F. Supp. 2d 1164 (D.S.D. 2000) .....................................................................................10, 11

*Nota Construction v. Keyes Associates, Inc.*,
  694 N.E.2d 401 (Mass. App. Ct. 1998) ......................................................................................11

*Pryor v. National Collegiate Athletic Association*,
  288 F.3d 548 (3d Cir. 2002)..........................................................................................................5

*In re Rockefeller Ctr. Properties Securities Litigation*,
  311 F.3d 198 (3d Cir. 2002)........................................................................................................13

*Scarfo v. McDonald*,
  C.A. No. 96C-10-264-VAB, 1998 Del. Super. LEXIS 476,
  (Del. Super. Ct. Dec. 3, 1998).......................................................................................................9

*In re Student Financial Corp.*,
  C.A. No. 03-507 JJF, 2004 U.S. Dist. LEXIS 4952 (D. Del. 2004) ..........................................9, 13

*T.P. Inc. v. J & D's Pets, Inc.*,
  C.A. No. 98C-01-205-WTQ, 1999 Del. Super. LEXIS 8,
  (Del. Super. Ct. Feb. 26, 1999) .....................................................................................................9

*Techton American Inc. v. GP Chemicals, Inc.*,
    C.A. No. 04C-05-271 CLS, 2004 Del. Super. LEXIS 355
    (Del. Super. Ct. Oct. 25, 2004) ...................................................................................16

*Toner v. Allstate Insurance Co.*,
    821 F. Supp. 276 (D. Del. 1993)............................................................................14, 15

*U.S. Small Bus. Association v. Progress Bank*,
    C.A. No. 03-3461, 2004 U.S.Dist. LEXIS 25963 (E.D. Pa. Dec. 22, 2004) ..................10

*Ward v. Fox & Lazo*,
    Civ. No. 13582, 1996 Del.Ch. LEXIS 92 (Del. Ch. July 8, 1996) ....................................8

*Werwinksi v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002)..............................................................................................9

*Wilmington Trust Co. v. Aetna Casualty & Surety Co.*,
    1993 Del. Super. LEXIS 436 (Del. Super. Ct. Dec. 9, 1993) .........................................10

## STATUTES AND RULES

6 Del. C. § 2-725(1) ........................................................................................................15

10 Del. C. § 8106 ............................................................................................................15

Fed. R. Civ. P. 9 ..............................................................................................................13

## MISCELLANEOUS

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
    § 1356 (1990) ..................................................................................................................5

Plaintiff E.I. du Pont de Nemours and Company ("DuPont") submits this memorandum in opposition to the Motion to Dismiss the Complaint (D.I. 5) filed by defendants, DAK Americas LLC and DAK Fibers LLC (collectively, "DAK").

DuPont respectfully submits that the Court lacks subject matter jurisdiction over the present action, for the reasons stated in DuPont's Motion to Remand (D.I. 10) and Memorandum in Support (D.I. 11), filed on March 24, 2005. Therefore, the Court should decline to resolve DAK's Motion to Dismiss and should instead remand this action to the Superior Court of Delaware, New Castle County.

However, if the Court decides that it has subject matter jurisdiction over this action, DAK's Motion to Dismiss the Complaint should be denied for the reasons stated in this Memorandum.

## SUMMARY OF ARGUMENT

The Complaint alleges claims for breach of a 1999 Supply Contract; breach of a 2004 Supply Agreement; fraud; and negligent misrepresentation. DAK does not dispute that the Complaint sufficiently states a claim for breach of the 2004 Agreement. DAK moves to dismiss only the fraud and negligent misrepresentation claims as insufficient under Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. DAK further asserts the affirmative defense of statute of limitations, arguing that DuPont's tort claims, and claims for breach of the 1999 Supply Agreement, are time-barred.

DAK's motion misapplies pleading standards by incorporating in its motion evidence and other facts outside the Complaint. This is improper under Rule 12(b)(6), which permits dismissal only if the Complaint allegations fail to state a claim for relief.

Under Rule 12(b)(6), the Court may not consider evidence outside the complaint, absent specific exceptions that are inapplicable here.

DAK's motion should be denied. *First*, DAK argues that DuPont's fraud and negligent misrepresentation claims should be dismissed because DuPont failed to "establish justifiable reliance" upon DAK's misrepresentations. In support of this argument, DAK incorporates and cites to various facts and documents outside the Complaint, including: (1) contracts executed by DuPont and DAK regarding other unrelated corporate matters; and (2) representations regarding the employment status of Hector Camberos, DAK's president, at the time Camberos made misrepresentations to DuPont. (DAK Brief (D.I. 6) at 2.)

DAK's reliance upon this evidence should be disregarded as extraneous to the Complaint allegations. The Complaint alleges that representatives of DuPont's Sontara® business repeatedly requested that DAK provide access to its sales data, so that the Sontara® business could determine whether the prices DAK was charging for polyester staple fiber ("PSF") complied with the formula price defined in the parties' 1999 Supply Contract. DAK repeatedly refused to provide this information, citing proprietary reasons. (Complaint ¶¶ 18, 28.) Now, DAK alleges in its brief that, pursuant to a separate contract to which the Sontara® business was not privy (again, most likely for the same purported proprietary reasons that DAK refused to produce its sales data), the Sontara® business representatives did in fact have access to this information after all. (DAK Brief at 4.) At most, evidence of such contracts creates a factual dispute about whether the Sontara® business justifiably relied upon DAK's misrepresentations regarding the prices Sontara® was paying for PSF.

2

Additionally, DAK asserts that Mr. Camberos was a DuPont employee when he made misrepresentations to the Sontara® business. (DAK Brief at 2.) DAK here again improperly relies upon evidence outside the Complaint, and contradicts previous submissions to this Court, in which it acknowledges that Mr. Camberos became president of the DAK joint venture on August 31, 1999. (*See* DAK Notice of Removal (D.I. 1), Affidavit of Hector Camberos, Exhibit A, at 3 (filed 2/8/05); *see also* Complaint ¶ 13.) Moreover, DAK does not dispute that Mr. Camberos was a DAK employee when he made misrepresentations in 2002 and 2003. Mr. Camberos's employment status is irrelevant; if anything, DuPont's purported employment of Mr. Camberos would provide even greater support for the Sontara® business's argument that it was entitled to rely upon his representations.

***Second***, the economic loss rule does not apply to DuPont's fraud and negligent misrepresentation claims. The Delaware Supreme Court has never applied the economic loss doctrine to a claim of fraud, nor has the Court applied the doctrine to a case outside of the product liability context. No court in Delaware has applied the economic loss doctrine to cases where, as here, the Complaint alleges that defendant made affirmative false statements of material fact in the course of a business transaction.

***Third***, DuPont's fraud and negligent misrepresentation claims fully satisfy the heightened pleading standard set forth in Rule 9(b). The Complaint offers detailed facts in support of each element of a fraud claim, including: (1) the identity of the persons who made the false statements, including Hector Camberos and Allen Block; (2) the specific dates on which the false statements were made to DuPont – including, but not limited to, February 8, 2002, the first week of March 2002, June 27, 2003, and September

3

4, 2003; (3) the location where the false statements were made – DAK's offices in Charlotte, North Carolina and the Sontara® business offices in Old Hickory, Tennessee; and (4) the recipients of the false statements – Carl Lukach, Dave Scarborough, and Ken Harrison. These allegations more than meet the requirements of Rule 9(b).

*Lastly*, the statute of limitations does not bar DuPont's claims. Most, if not all, of DuPont's claims plead actionable conduct that falls well within the applicable limitations periods. Moreover, DuPont properly pled the elements of fraudulent concealment and other tolling principles, which operate to toll the statute of limitations for any claims that occurred outside the limitations period. To the extent DAK introduces evidence that contradicts these allegations, DAK's argument is premature.

DuPont respectfully requests that DAK's Motion to Dismiss be denied.

## STATEMENT OF FACTS

Relevant factual statements and counter-statements are referenced throughout this Brief.

## ARGUMENT

### A.    Standard of Review

A court may grant a motion to dismiss pursuant to Rule 12(b)(6) only if, upon accepting as true the well-pleaded allegations in the complaint, and viewing those allegations in the light most favorable to plaintiff, the court determines plaintiff is not entitled to relief. *Bartholomew v. Fischel,* 782 F.2d 1148, 1152 (3d Cir. 1986). When reviewing a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citation omitted).

4

It is black-letter law that "'[a] motion to dismiss for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6) is to be evaluated only on the pleadings.'" *A.D.*

*Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 266 (3d Cir. 2001) (quoting

*O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985)); *N.A.M.I. v. Essex County Bd. of*

*Freeholders*, 91 F. Supp. 2d 781, 787 n.7 (D.N.J. 2000) ("This Court need not consider

claims that have not been pleaded in the complaint."); 5A CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (1990).

In spite of this well-established principle, DAK attaches three exhibits to its

Motion to Dismiss: (1) a 1999 Limited Liability Company Agreement; (2) a 2001

Framework Agreement; and (3) a Call Option Notice. DAK argues that the Court may

consider these documents, based upon a limited exception articulated by the Third Circuit

for documents that are "integral to" or "relied upon in the complaint." (*See* DAK Brief

at 4 n.4, citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (explaining

that the critical factor is not whether an "extrinsic document" was cited in a complaint,

but rather whether the complaint is "based" on an extrinsic document); *Pryor v. Nat'l*

*Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002) ("Documents that the defendant

attaches to the motion to dismiss are considered part of the pleadings if they are referred

to in the plaintiff's complaint and are central to the claim; as such, they may be

considered by the court.").)

The documents attached to DAK's Motion do not fall within this narrow

exception because they are not "integral to" or "relied upon" in the Complaint. In fact,

the Complaint does not even reference these documents. DAK introduces the documents

for two limited purposes. First, DAK cites to the documents for additional background

5

information on the relationship between DuPont and DAK. (DAK Brief at 4-5). DAK

concedes that at least some of this background information is "insignificant". (*Id.* at 4

n.4.) Second, DAK introduces the documents in defense of DuPont's allegations that (1)

the Sontara® business representatives were denied access to DAK purchasing data; and

(2) DuPont justifiably relied upon false statements made by DAK. (*Id.* at 4.) Such

evidence may or may not become relevant in the context of discovery in this case, but it

is entirely irrelevant at the pleadings stage. Accordingly, the Exhibits are extraneous to

the Complaint and may not be considered in resolving DAK's Rule 12(b)(6) motion. *In

re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### B.    The Complaint Allegations Sufficiently Plead the Element of Justifiable Reliance

The Complaint allegations plead all the elements of a claim for fraudulent

misrepresentation and negligent misrepresentation. Specifically, the Complaint pleads

facts in support of the element of justifiable reliance.[1]  The Complaint alleges that Carl

Lukach, the Global Director of DuPont's Sontara® business, spoke with Mr. Camberos

many times between 2000 and 2004 about the prices the Sontara® business was paying

for PSF under the 1999 Supply Contract. (*See, e.g.,* Complaint ¶ 13.) The Complaint

further alleges that Mr. Camberos provided numerous assurances that DAK was charging

the Sontara® business the correct price for PSF under that contract. (*Id.* ¶ 14.) Mr.

Lukach and Mr. Camberos developed a close working relationship to address the mutual

---

[1]    DuPont does not dispute the application of Delaware law to its tort claims; nor does DuPont dispute that justifiable reliance is an element of DuPont's fraud and negligent misrepresentation claims. (DAK Brief at 7 n.8.) DuPont disputes the application of the CISG to its claims for breach of the 1999 Supply Contract. (*Id.*; *see* Motion to Remand, filed 3/24/05.)

needs of both businesses, and based upon this relationship, Mr. Lukach trusted and relied upon Mr. Camberos's assurances.  (*Id.* ¶ 15.)  Other representatives of the Sontara® business continued to question DAK about pricing between 2000 and 2003; during this time, DAK representatives continued to reassure the Sontara® business that it was receiving the appropriate pricing discounts under the contract.  (*Id.* ¶¶19-28.)  The Sontara® business was forced to rely upon these assurances because DAK refused to provide the Sontara® business with purchasing data, citing confidentiality and proprietary concerns.  (*Id.* ¶¶ 25, 28.)

        In its Motion to Dismiss, DAK contends that DuPont cannot plead that it justifiably relied upon misrepresentations made by DAK, because during part of the performance of the 1999 Supply Contract, DuPont was a part-owner of the DAK joint venture.  DAK does not cite any authority in support of this proposition.  (DAK Brief at 8.)  Its argument, in fact, is contrary to law, which holds that members of a joint venture may bring actions for fraud and other claims arising out of the joint venture relationship.  *Metropolitan Communication Corp. BVI v. Advanced MobileComm Techs. Inc.,* 854 A.2d 121 (Del. Ch. 2004) (holding that, in action by member of LLC against other members, the alleged misrepresentations supported a claim of common law fraud); *DeBakey Corp. v. Raytheon Serv. Co.*, C.A. No. 14947, 2000 Del. Ch. LEXIS 129, at *81-82 (Del. Ch. Aug. 25, 2000) (resolving fraud claims brought by members of joint venture, after trial on the merits) (cited in DAK Brief at 9) (Ex. A hereto); *see also Algernon Blair Group, Inc. v. Corneal*, Civil Action No. 86-4465, 1988 U.S. Dist. LEXIS 1497, at *26-27 (E.D. Pa. 1988) (same) (Ex. B hereto).

DAK's brief essentially concedes that its justifiable reliance argument addresses some, but not all, of DuPont's fraud and negligent misrepresentation claims. As DAK acknowledges, the 1999 Supply Agreement remained in effect after DuPont sold its interest in the DAK joint venture. (DAK Brief at 5; *see* Complaint ¶ 16.) DAK disputes only the date on which DuPont transferred its interest in the joint venture, improperly relying upon documents extraneous to the Complaint to assert this disputed fact. (DAK Brief at 5.) However, even under DAK's articulation of the facts, DuPont was no longer related to DAK as of April 1, 2002. (*Id.*) The Complaint alleges additional factual misrepresentations after that date. (Complaint ¶¶ 26-28.) DAK's argument regarding justifiable reliance is irrelevant with respect to these claims.

DAK further argues that DuPont "cannot claim that it justifiably relied on the alleged misrepresentations it knew to be false based upon the knowledge it obtained as a co-owner before the business was sold." (DAK Brief at 10.) Again, DAK bases this argument on evidence extraneous to the Complaint, claiming that as a result of its interest in the joint venture relationship, DuPont had access to DAK's financial records, and therefore DuPont could not have been misled. (DAK Brief at 8.) Even if the Court could consider such evidence on a Rule 12(b)(6) motion, which it may not, (*see supra* Section A), this evidence at most raises a factual dispute on this element, which may only be resolved by a factfinder.

None of the cases cited by DAK on this issue are on point, because each case addresses the resolution of a summary judgment motion or a trial. DAK does not cite a single case addressing the dismissal of a fraud claim under Rule 12(b)(6). *See Ward v. Fox & Lazo*, Civ. No. 13582, 1996 Del. Ch. LEXIS 92, at *15 (Del. Ch. July 8, 1996)

8

(granting summary judgment based upon undisputed evidence) (Ex. C hereto); *T.P. Inc.*

*v. J & D's Pets, Inc.* C.A. No. 98C-01-205-WTQ, 1999 Del. Super. LEXIS 8, at *10-11

(Del. Super. Ct. Feb. 26, 1999) (resolving fraud claims after trial on the merits, which

included evidence that plaintiffs ignored expert's advice before proceeding with

transaction) (Ex. D hereto); *Scarfo v. McDonald*, C.A. No. 96C-10-264-VAB, 1998 Del.

Super. LEXIS 476, at *6-8 (Del. Super. Ct. Dec. 3, 1998) (entering judgment on

negligent misrepresentation claim after a trial) (Ex. E hereto).

By comparison, in this case, at this stage of the pleadings, DuPont is required only

to allege facts in the Complaint which, viewed in the light most favorable to DuPont,

establish a claim for relief. *Bartholomew*, 782 F.2d at 1152. DuPont has done so.

DAK's arguments amount to nothing more than a dispute as to the truth of DuPont's

allegations relating to the justifiable reliance element. However, for purposes of a Rule

12(b)(6) motion, such allegations are presumed to be true. *In re Student Fin. Corp.*, C.A.

No. 03-507 JJF, 2004 U.S. Dist. LEXIS 4952, at *5-6 (D. Del. 2004) (Ex. F hereto). *See

also Conley v. Gibson,* 355 U.S. 41, 45 (1957). Therefore, DAK's dismissal arguments

are premature and should be denied.

### C.   The Economic Loss Doctrine is Inapplicable to DuPont's Claims

#### 1.   DAK's Defense of the Economic Loss Rule is Unsupported by Controlling Delaware Law.

The economic loss doctrine does not bar DuPont's fraud and negligent

misrepresentation claims. Neither the Third Circuit nor the Supreme Court of Delaware

has ever applied the economic loss doctrine to bar any tort claim outside the product

liability context. *See Werwinksi v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002)

(applying economic loss rule to product liability action); *Danforth v. Acorn Structures,*

9

*Inc.*, 608 A.2d 1194, 1201 (Del. 1992) ("we hold that purely economic loss caused by

qualitatively ***defective products*** is not recoverable in tort under Delaware law")

(emphasis added). And no Delaware court has ever applied the economic loss doctrine to

a fraud claim. *See Wilmington Trust Co. v. Aetna Cas. & Sur. Co.*, 1993 Del. Super.

LEXIS 436, at *9 (Del. Super. Ct. Dec. 9, 1993) ("The Supreme Court of Delaware has

not extended the economic loss doctrine beyond claims against suppliers of defective

goods.") (Ex. G hereto); *Bell Helicopter Textron Inc. v. Tridair Helicopter, Inc.*, 982 F.

Supp. 318, 322 (D. Del. 1997) (regarding application of economic loss doctrine to trade

secret misappropriation, court held that "[b]ased on how this doctrine has developed thus

far in the Delaware Supreme Court, it is unlikely the Delaware high court would condone

such an extension").

     Because this State's highest court has yet to precisely rule upon the issue, this

Court may look to outside jurisdictions for guidance. *See Hughes v. Long,* 242 F.3d 121,

128 (3d Cir. 2001) (holding that when a state court has not decided an issue being

reviewed by a federal court, the federal court may look to "decisions from other

jurisdictions that have discussed the issues we face here"). A growing number of federal

and state courts have refused to apply the economic loss doctrine to claims of fraud or

negligent misrepresentation outside the product liability context, particularly in cases

involving intentional fraud. *See U.S. Small Bus. Ass'n v. Progress Bank,* C.A. No. 03-

3461, 2004 U.S. Dist. LEXIS 25963, at *19 (E.D. Pa. Dec. 22, 2004) (noting that the

"emerging trend in lower Pennsylvania courts and in other jurisdictions has been to

permit purely economic recovery in causes of action for intentional fraud" (citing

*Werwinski,* 286 F.3d at 676)) (Ex. H hereto); *Northwestern Public Service v. Union*

10

*Carbide Corp.*, 115 F. Supp. 2d 1164, 1170 (D.S.D. 2000) (holding that state Supreme

Court would likely allow fraud claims under the economic loss doctrine); *Castrol Indus.*

*N. Am. Inc. v. Airosol Co., Inc.,* No. 01 C 1007, 2002 U.S. Dist. LEXIS 17192, at \*6

(N.D. Ill. Sept. 13, 2002) (noting that state's economic loss doctrine recognizes an

exception for claims of fraud and negligent misrepresentation) (Ex. I hereto); *Budgetel*

*Inns, Inc. v. Micros Sys., Inc.* 8 F. Supp. 2d 1137, 1149 (E.D. Wis. 1998) (predicting that

state Supreme Court would likely allow fraud claim despite economic loss doctrine). *See*

*also David Pflumnn Paving & Excavating, Inc. v. Found. Serv. Co.,* 816 A.2d 1164, 1171

n.2 (Pa. Super. Ct. 2003) ("there are no Pennsylvania Supreme Court or Superior Court

cases that indicate that the economic loss doctrine bars a claim for fraudulent

misrepresentation"); *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A.2d 277, 278 (Pa. Super.

Ct. 1985) (holding that claims for intentional wrongdoing are an exception to the

economic loss doctrine); *Nota Constr. v. Keyes Assocs., Inc.*, 694 N.E.2d 401, 405 (Mass.

App. Ct. 1998) ("An exception to the [economic loss] doctrine permits recovery for

economic losses resulting from negligent misrepresentation.").

The two cases cited by DAK on this issue are distinguishable because in those

cases plaintiffs alleged negligent performance of a contract, and the underlying

misrepresentation consisted of promises of future performance. *See International*

*Fidelity Ins. Co. v. Mattes Elec., Inc.*, 2002 Del. Super. LEXIS 441 (Del. Super. Ct. June

27, 2002) (Ex. J hereto); *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*

*Inc.,* 2002 Del. Super. Ct. LEXIS 305 (Del. Super. Ct. June 13, 2002) (Ex. K hereto).

11

By comparison, in this case the Complaint alleges that DAK deliberately made false statements to the Sontara® business regarding the price being charged by DAK for PSF. The economic loss rule is inapplicable to such claims.

> ### 2.     Assuming *Arguendo* that the Economic Loss Doctrine Applied to DuPont's Tort Claims, an Exception to the Doctrine Is Applicable Here.

In *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super. Ct. 1990), the court adopted § 552 of the Restatement (Second) of Torts, which provides the following exception to the economic loss doctrine:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* at 1386 (quoting Restatement (Second) of Torts § 552 (1977)); *Danforth v. Acorn Structures, Inc.*, CA No. 90C-JN-30, 1991 Del. Super. LEXIS 454 (Del. Super. Ct. Nov. 22, 1991) ("*Danforth I*") (Ex. L hereto).

In *Danforth I*, the court held that for the exception to apply, "the defendant [must have] supplied the information to the plaintiff for use in business transactions with third parties," and that "the defendant is in the business of supplying information." *Id.* 1991 Del. Super. LEXIS 454 at *6-7. The *Danforth I* court did not provide clear guidance on this issue under Delaware law, in that it failed to "delineate which types of businesses are 'in the business of supplying information,'" and its decision applied the law of Illinois. *Christiana,* 2002 Del. Super. LEXIS 305, at *25. However, at least one Delaware court has applied a standard that focuses "upon the nature of the information at issue . . . and its

12

relation to the kind of business being conducted." *Id.* at \*26 (citing *Rankow v. First Chicago Corp.*, 870 F.2d 356, 361 (7th Cir. 1989)).

In this case, the facts set forth in the Complaint support application of the exception to the economic loss doctrine. DAK supplied key information to the Sontara® business, consisting of the price the Sontara® business had to pay for PSF. (*See, e.g.*, Complaint ¶ 14.) DuPont then used this information in its business transactions. (*Id.*) Therefore, its claims may not be barred by the economic loss rule.

### D.    Counts IV and V of DuPont's Complaint Meet the Heightened Pleading Requirement of Fed. R. Civ. P. 9(b)

DAK's motion selectively highlights Complaint allegations in an effort to create the false impression that the Complaint does not contain sufficiently detailed facts in support of its tort claims. This is wrong. The Complaint sets forth specific facts that detail particular false statements made by DAK employees to representatives of the Sontara® business. These detailed allegations exceed the requirements set forth in Rule 9(b).

Rule 9(b) does not require plaintiffs to include "every material detail of the fraud such as date, location and time [; however,] plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Sys.*, 135 F. Supp. 2d 551, 557 (D.N.J. 2001)). *See In re Student Finance Corp.*, C.A. No. 03-507 JJF, 2004 U.S. Dist. LEXIS 4952 (D. Del. Mar. 23, 2004) (same) (Ex. F hereto).

DAK's statement that, in order to satisfy Rule 9(b), DuPont "must indicate the date, time and place of the alleged fraud," (DAK Brief at 17), was expressly rejected by

this Court in *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276 (D. Del. 1993). In *Toner,* the court held that specific facts including "the time, the place, and the content of the deception leading to the alleged breach," are "not [ ] universal requirement[s] for meeting Rule 9(b)." *Id.* at 284. The court explained that in determining whether a plaintiff's claim has met the first requirement of the Rule, courts in this Circuit are "counseled against focusing solely on the 'particularity' language,' because that method 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Id.* (quoting *Christidis v. First Pa. Mortgage Trust,* 717 F.2d 96, 99 (3d Cir. 1983)).

The Complaint meets the heightened pleading requirement by alleging the date, place, and the individuals who made the misrepresentations to Sontara® business representatives. (*See* Motion to Dismiss at 17.) The Complaint alleges that DAK made misrepresentations in 2000, the spring of 2001, February 2002, March 2002, and June 2003. (Complaint ¶¶ 14, 19, 21-22. 24, 27.) The Complaint identifies the specific individuals who made these misrepresentations by name. (*Id.* ¶¶ 14, 21, 22, 24, 27.) The Complaint identifies the substance of the misrepresentations – in other words, the false statements themselves. (*Id.*) The Complaint further identifies the recipient of the misrepresentation and the location where the representations were made. (*Id.*) These allegations satisfy, if not exceed, the heightened pleading standard set forth in Rule 9(b).

DAK argues that the Complaint is deficient because two paragraphs in the Complaint rely upon "information and belief". (DAK Brief at 19-20, citing Complaint ¶¶ 31, 33.) Such pleading is permissible in "situations in which the factual information is peculiarly within the knowledge or control of the defendant." *Toner,* 821 F. Supp. at 285.

14

That is precisely the case in the two paragraphs cited by DAK, which allege that DAK charged DuPont excessive prices, despite its reassurances to Sontara® representatives that the prices were not excessive. (Complaint ¶¶ 31, 33.) Moreover, the Complaint alleges that knowledge of whether the prices were accurate under the 1999 Supply Contract was within the exclusive possession of DAK, and that the Sontara® business had no other way of determining whether its prices were accurate. (*Id.* ¶¶ 24, 28.) This is sufficient under Rule 9(b). *Toner,* 821 F. Supp. at 285.

      **E.**    **DuPont's Claims Are Not Barred by the Statute of Limitations**

The Complaint allegations assert actionable conduct occurring between 1999 and 2004. DuPont filed the Complaint on December 10, 2004. (Complaint ¶¶ 6, 13-33.) Accepting the Complaint's allegations as true, none of DuPont's claims are time-barred. ***First***, with respect to DuPont's claim for breach of the 1999 Supply Agreement, the relevant statute of limitations is four years, according to the applicable Delaware statute governing the sale of goods. *See* 6 Del. C. § 2-725(1). Although DAK attempts to argue that this statute is preempted by the CISG, DAK concedes that the CISG contains no competing statute of limitations. (DAK Brief at 21 n.19.) Thus, it is undisputed that all claims in the Complaint arising under the 1999 Supply Contract, and accruing after December 10, 2000, are not time-barred.

***Second***, the applicable statute of limitations for DuPont's tort claims is three years. 10 Del. C. § 8106; *see also* DAK Brief at 22. Therefore, it is undisputed that all tort claims alleged in the Complaint that accrued after December 10, 2001, are not time-barred.

***Third***, the statute of limitations for all tort claims accruing before December 10, 2001, and all contract claims accruing before December 10, 2000, are tolled by the

15

doctrine of fraudulent concealment. *Techton Am., Inc. v. GP Chems, Inc.*, C.A. No. 04C-05-271 CLS, 2004 Del. Super. LEXIS 355, at *5-6 (Del. Super. Ct. Oct. 25, 2004) (Ex. M hereto). The doctrine of fraudulent concealment applies upon proof of "defendant's knowledge of the alleged wrong as well as an affirmative act of concealment by the defendant of the alleged wrong." *Id.* at *6.

The Complaint in this case sufficiently alleges both elements of fraudulent concealment. DuPont asserts throughout its Complaint that DAK knew it was not charging the Sontara® business the accurate price in accordance with the provisions of the 1999 Supply Agreement. Specifically, DuPont alleged that Hector Camberos knew of the Sontara® business' concerns regarding pricing, and falsely represented to the Sontara® business that it was not being overcharged. (*See* Complaint ¶¶ 14-15.) DuPont further alleges that DAK took steps to conceal pertinent information regarding its fraud and negligent misrepresentation claims from DuPont. In particular, DuPont alleged that DAK denied repeated requests by the Sontara® business to view DAK's sales and pricing data, so that it could confirm DAK's pricing methods. (*Id.* ¶¶ 19-20, 25-26, 28.) DuPont's allegations that DAK prevented the Sontara® business from accessing DAK's pricing data, and instead provided false assurances of compliance, satisfy the affirmative concealment requirement necessary to establish fraudulent concealment.

***Third***, with respect to the contract claims, DAK repeatedly made false statements about pricing during the course of the 1999 Supply Contract. Under these circumstances, "the statute of limitations does not typically run against a continuing cause of action until the termination of the contract." *Burger v. Level End Dairy Investors,* 125 B.R. 894, 901-902 (D. Del. 1991). Moreover, the "statute begins to run only when full damages

16

can be ascertained and recovered." *Id* Therefore, DAK's contract claims should be tolled under the "continuing breach" exception, which tolls the statute of limitations.

  ***Fourth***, with respect to DuPont's tort claims, the Complaint allegations demonstrate that such claims were "inherently unknowable" and that DuPont is "blamelessly ignorant of the wrongful act and the injury complained of." *Colemanr. v. PricewaterhouseCoopers, LLC,* 854 A.2d 838, 842 (Del. 2004). DuPont could not confirm whether DAK breached the pricing provisions because DAK repeatedly refused to provide the necessary sales and pricing data. Further, DAK made repeated false assurances of compliance over an extended time period. (Complaint ¶¶ 24, 28.) Therefore, the three-year statute of limitations for tort claims must be tolled, and does not begin to run until the "discovery of the facts 'constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence upon inquiry which, if pursued, would lead to the discovery' of such facts." *Coleman,* 854 A.2d at 842 (quoting *Becker v. Hamada, Inc.,* 455 A.2d 353, 356 (Del. 1982)).

  The Complaint alleges that DAK's affirmative conduct prevented the Sontara® business from determining whether the prices it paid for PSF complied with the terms of the 1999 Supply Contract. The Sontara® business had no way of determining whether its prices were accurate. The Sontara® business was forced to rely upon the assurances of its supplier, and had no way of knowing that it was being defrauded by DAK. Accordingly, the statute of limitations should be tolled based upon properly pled allegations of misconduct by DAK.

## CONCLUSION

DAK's Motion to Dismiss the Complaint should be denied.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: _____.
    Kevin R. Shannon (No. 3137)
    (kshannon@potteranderson.com)
    David E. Moore (No. 3983)
    (dmoore@potteranderson.com)
    Hercules Plaza, Sixth Floor
    1313 N. Market St., P.O. Box 951
    Wilmington, DE  19899-0951
    (302) 984-6000

Of Counsel:

Kent A. Gardiner
Aimée D. Latimer
Stephen Martin
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 624-2500

Dated:  April 14, 2005

*Attorneys for Plaintiff*
*E. I. du Pont de Nemours and Company.*

678117

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on April 14, 2005, the attached document

was hand-delivered and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification of such filing(s) to the following and the document

is available for viewing and downloading from CM/ECF.


William J. Wade
Matthew W. King
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19899



Kevin R. Shannon
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
kshannon@potteranderson.com
dmoore@potteranderson.com